UNITED STATES of America,
Plaintiff-Appellee,

v.

KIN PING CHEUNG and Sammy Cho,
Defendants-Appellants.

No. 72–2622.

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1973.

Lawrence R. Metsch, Miami, Fla. (Court-appointed), for Cheung.

Samuel S. Forman, Miami, Fla. (Court-appointed), for Cho.

Robert W. Rust, U. S. Atty., George A. Kokus, Charles O. Farrar, Jr., Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before WISDOM, DYER and INGRAHAM, Circuit Judges.

WISDOM, Circuit Judge:

This case presents the question whether the defendants' second prosecution was permissible under the double jeopardy clause after the court on its own motion declared a mistrial during their first trial. The defendants-appellants, Kin Ping Cheung and Sammy Cho, were convicted of importing heroin into the United States, and of possessing heroin with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 952(a). We set aside the convictions because we find that there was no "manifest necessity" for the district court's sua sponte declaration of a mistrial and that the Court, therefore, erred in overruling, at the commencement of the second trial, the defendant's plea of double jeopardy.

I.

On April 13, 1972, the grand jury for the Southern District of Florida returned a four-count indictment naming three defendants, Cheung and Cho, and a third man, Lee Fong Ting. Count I of

the indictment charged Lee Fong Ting with possession of heroin with intent to distribute it; Count II charged him with distribution of heroin; Count III charged all three defendants with illegally importing heroin; and Count IV charged Cheung and Cho, the two appellants, with possessing heroin with intent to distribute it.

Trial was set for May 15, 1972. On that day, Ting withdrew an earlier plea of not guilty and pleaded guilty to Count III of the indictment. A joint trial of the other two defendants then commenced. During the course of that trial, the government called Ting as a witness. The testimony he gave tended to exculpate Cheung. Ting testified that Cheung had contracted only to bring a suitcase full of clothing into the United States, and that he had acted throughout in total ignorance of what it was he was helping to bring into the United States. In cross examining Ting, counsel for Cho sought to impeach his testimony by questioning him about his guilty plea. During this cross examination the difficulties occurred that eventually led to the declaration of a mistrial. Ting asserted that he was having trouble with his memory; and acute problems arose concerning the translation of his testimony. Specifically, there was a serious question whether the word he used to describe what he thought he was importing into the United States should be translated as "food" or as "Chinese medicine". The trial judge had two discussions with counsel and the interpreters over the accuracy of the translation. After the completion of Ting's testimony, an Assistant United States Attorney, as an officer of the Court, felt compelled to call to the attention of the trial judge a statement by a potential Government witness to the effect that there was a "little bit lacking" in the interpretation of Ting's testimony. This person, when questioned by the trial judge, pointed out that there were a number of Chinese dialects (he understood three), and the court interpreter seemed to comprehend Mandarin but did not fully understand Shang-

haiese or Cantonese. In addition, there are certain concepts which cannot be translated in another language; that in some cases the best fidelity rate was about 70 to 75 percent. At this point, the trial judge, on his own motion, declared a mistrial in the case, and set aside Lee Fong Ting's guilty plea. He stated that he expected an interpreter to be found who could speak the dialect of any witness. He set May 30, 1972, as the date for a retrial of the case.

On May 30, the Court granted the Government's motion for a psychiatric examination of Ting. On that same day, over the objections of the other two defendants that the retrial violated their rights under the double jeopardy clause, the trial of Cheung and Cho began. The court severed the trial of the two defendants the next day. Cho's trial proceeded, and on the following day, June 1, 1972, he was adjudged guilty on Counts III and IV of the indictment. On June 5, 1972, Ting entered a second plea of guilty on Count III. That same day, Cheung's second trial began. During that trial, Cheung called Ting as a witness for his defense. Ting again testified that Cheung had acted innocently, and had thought that he had been importing a suitcase full of clothing, not one full of heroin. The jury returned a verdict of guilty on both counts.

## II.

One hundred and fifty years ago, Mr. Justice Story articulated the still viable doctrine of "manifest necessity" that controls the validity of a court's declaration of a mistrial without the consent of the accused. When a trial judge declares a mistrial on his own or on the prosecutor's motion, a retrial is permissible only if there exists a "manifest necessity" for the declaration of the mistrial lest "the ends of public justice would otherwise be defeated". United States v. Perez, 1824, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165. In determining whether a "manifest necessity" exists for the declaration of a mistrial, the courts are to weigh the "defendant's valued right to have his trial completed by

a particular tribunal" against "the public's interest in fair trials designed to end in just judgments". Wade v. Hunter, 1949, 336 U.S. 684, 690, 69 S.Ct. 834, 837, 93 L.Ed. 974. The decision must be made "taking all the circumstances into consideration", *Perez*, 9 Wheat. at 580; and "virtually all of the cases turn on the particular facts and thus escape meaningful categorization". Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 425, 431. In *Somerville* the Supreme Court brought up to date the principles governing the law of double jeopardy. This Court has recently reviewed these principles in Smith v. Mississippi, 5 Cir. 1973, 478 F.2d 88, and McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145.

In this case two considerations compel the conclusion that the trial judge abused his discretion in finding that a "manifest necessity" for a mistrial existed. First, the trial judge failed to consider alternatives to declaring a mistrial. Here, he declared the mistrial during the first trial without due consideration of the defendants' interest in having their guilt or innocence determined at *that* trial. The importance of this kind of consideration was established by the Supreme Court's decision in United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. In that case, Justice Harlan's plurality opinion stated:

. . . [W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

400 U.S. at 485, 91 S.Ct. at 557.

In stating the Court's holding, Justice Harlan made clear that a "scrupulous exercise of judicial discretion" demands inquiry into the possible alternatives to a mistrial:

It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial [citing Perez]. Therefore, we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment.

400 U.S. at 486–487, 91 S.Ct. at 558.

In this case, as in *Jorn*, the record clearly shows that the trial judge failed to inquire into the availability of less drastic techniques for dealing with the problems that arose during the cross-examination of Lee Fong Ting. He did not, for instance, consider the possibility of deleting Lee Fong Ting's testimony from the record, giving the jury appropriate instructions to disregard the testimony. He did not consider the possibility of a short continuance. It was accordingly improper for him to conclude that a "manifest necessity" for a mistrial existed, or that the "ends of public justice" demanded a mistrial.

Second, this case is one where the mistrial "entailed not only a delay for the defendant, but also operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case". *Somerville,* 410 U.S. at 469, 93 S.Ct. at 1073, 35 L.Ed.2d at 434; citing Downum v. United States, 1963, 372

U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; see McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145, at 1150. The prosecution's witness had taken the stand and had given testimony tending to exculpate one of the defendants. The trial judge should have realized that the Government, knowing what this witness would testify, would have a new opportunity at the later trial to seek a severance; if there was a severance, to call the witness only at the trial of the defendant he inculpated, and to refrain from calling him at the other defendant's trial. To be sure, here Cheung called Ting at the later trial; but at the earlier trial, the jury had heard his exculpatory testimony given by a government witness, not by a defense witness. The Government stood to gain advantage from the mistrial, since it could avoid the embarrassment of having its own witness exculpate a defendant.

This was "a situation with a tantalizing potential for prosecutorial misconduct", *McNeal,* 481 F.2d at 1150. In the circumstances, we conclude that there was no "manifest necessity" for declaring a mistrial.

Reversed.