UNITED STATES

v.

**Steven T. REX, 016 46 0035, Private E–1, U. S. Marine Corps.**

**NCM 76 2161.**

U. S. Navy Court of Military Review.

30 March 1977.

LT Howard L. Schwartz, JAGC, USNR, Appellate Defense Counsel.

CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before MURRAY, MALLERY and GREGORY, JJ.

MURRAY, Senior Judge:

On appeal from his conviction, at a second trial, of a charge of conspiracy to obstruct justice, in violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881, the appellant raises an issue of double jeopardy—more precisely known as former jeopardy in military law—based upon an abuse of discretion by the trial judge at appellant's first trial which ended through a *sua sponte* declaration of mistrial.

At the second trial, appellant's defense counsel, both military and civilian, made a number of motions prior to the entry of appellant's guilty plea to Charge I (the conspiracy) and not guilty to the remaining charges pursuant to a pretrial agreement. One of the motions was for a dismissal of all charges on the ground that the trial judge at the earlier court-martial, as noted, had abused his discretion in declaring the mistrial. The motion was later amended to a motion to dismiss on former jeopardy grounds. In support thereof, appellant introduced the verbatim record of the earlier proceedings and the court recessed to allow the new judge an opportunity to read that exhibit. After a continuance, the new judge denied the motion.

The record of the earlier proceeding indicates that appellant was arraigned and pleaded not guilty to the same marijuana possession and larceny charges which were also referred to the second trial. The government's case had been presented and the trial counsel had rested. The defense then called a Private First Class Tagg, whose testimony basically implicated an in-

dividual named Stouffer in the larceny and marijuana specifications. Then defense counsel called the trial counsel as his next witness. The trial counsel inquired into the nature of this unusual procedure without asking for an Article 39(a) session out of the hearing of the members. The original trial judge compounded this error by also insisting, in front of the members, to know why the defense wanted to call the trial counsel as a witness. It should have been obvious to both the prosecutor and the trial judge that such procedure was ill-advised, but since he was directed to clarify the "nature of" the request—in the presence of the members—defense counsel replied:

> DC: He [the trial counsel] has apparently been in telephonic communication with STOUFFER, and we believe that STOUFFER has made admissions to Captain CASSIDY [the TC] regarding this, we would like to have Captain CASSIDY testify.

The judge considered that such testimony would be hearsay and, therefore, inadmissible. The defense counsel argued that trial counsel's testimony might be an exception to the hearsay rule and, stated that the exception was "that it is an admission against him [Stouffer], as he has admitted to a crime." Finally realizing the potentially prejudicial effect to the government that defense counsel's answers might be making on the members, the military judge called an Article 39(a) session out of the hearing of the members. During this session, the trial counsel related the circumstances surrounding a telephone call he had received. Trial counsel made it clear that defense counsel was on the line at the same time; that trial counsel had no way of identifying the caller as either Stouffer, the appellant, or some other third party; that the caller initially admitted that the marijuana was his but then denied it; and that the defense

counsel had not requested that Stouffer be subpoenaed as a witness because he "knew" Stouffer would deny culpability on the witness stand.[1] The following colloquy then ensued:

> TC: . . . However, I feel it is prejudicial to bring it up in front of the members, making it look like the government was trying to hide some material evidence, defense counsel knowing that he didn't even want to talk with me, even though STOUFFER would not admit to taking the stuff.

> MJ: Well, gentlemen, especially Lieutenant BAER, you have indicated, in the presence of the members, material which has not been proven in any way before this court. There had been nothing more than pure bald assertion this might transpire. The members of the court have heard this. The question at this time is whether or not that statement has so tainted these proceedings that we need to continue. I personally would like an opportunity to do some research on this, and I suggest that each of you do the same before this court returns.

When the Article 39(a) session reconvened, the trial counsel requested that the judge explain to the members the background of the question. The judge then tried to get the government and defense to agree on a stipulation of fact, but this attempt was unsuccessful. The possibility of an instruction to the members was then discussed.

The defense suggested that the military judge "re-advise" the members that anything said by either counsel was not evidence and that they should disregard his statement. The trial counsel objected:

---

1. Stouffer, by then a civilian, was a key character in the case. Briefly stated, the government contention was that Stouffer and the appellant had stolen government property. These items, together with some marijuana, were found in Stouffer's van. The appellant had made a sworn statement to investigators that Stouffer was not involved and that the appellant was the sole culprit. As a result, Stouffer was not charged and was allowed to be released from active duty one week after the incident. As a result of the statement, the government also sought to charge the appellant with obstruction of justice.

MJ: Now, Captain CASSIDY, do you think that would be sufficient to erase from the minds of the members this statement?

TC: No, Your Honor, we do not. We believe that defense counsel, that his statement seems to show—put a bad light on the government, seems to be saying that this man STOUFFER gave him information, STOUFFER is unable to or will not come forward, the government is not prepared to give this information to them, and we feel, if we are going to continue this court-martial, with these particular members, it is going to be necessary to explain to them exactly the background, why this statement was made by defense, knowing full well that STOUFFER would not be a witness for the defendant. We request that the members be given a full account of the background of STOUFFER–this conversation, from Lieutenant BAER's statement.

DC: We would just like to reiterate that we feel this problem can be overcome by an instruction by the military judge on this.

MJ: Very well. I will instruct the members of the court concerning their need to disregard any statement made by Lieutenant BAER, and also instruct them upon inferences from that statement, regarding possible misconduct or bad faith on the part of the government. Is that sufficient, Captain CASSIDY?

TC: I don't believe so, Your Honor. I feel that they have been given the impression—the members have now been outside the courtroom for approximately 45 minutes, and I think unless they heard in this courtroom the government knows what STOUFFER has to say and the government has not produced him, and defense counsel may still be looking for him, we believe that if the military judge just says disregard defense counsel—that will not clear the impression the government knows something they are not telling the members of the court, we feel that their minds have been set, that they are looking forward to what STOUFFER has to say, and we feel at this time to say "Just forget about it," will not clearly wipe it out of their minds. We feel that this should be brought out and explained to them fully.

At no time did either the prosecution or defense ask for a mistrial or seek anything except clarifying instructions to the members.

In this frame of reference the members were again summoned, and the judge instructed them as follows:

MJ: .... Gentlemen, I apologize for the brief delay. During the out of court session counsel for both sides and myself have been discussing the comment made by the defense counsel in regard to his request to call as a witness Captain CASSIDY, the trial counsel. As a result of this hearing, I have ruled as a matter of law that: one, the government has not acted in any disqualifying capacity, that it has not acted with bad faith, has not with-held any evidence that should be brought before this court, but has proceeded to martial his evidence before this court in the proper fashion.

MJ: I am instructing you at this time to disregard completely the comment made by the defense counsel regarding any statements that might have been made to Captain CASSIDY on the telephone, and I am going to attempt at this time to question each of you, to determine whether or not you can sincerely disregard these comments made by Lieutenant BAER.

Now in all fairness to the defense, I must add that at this time he has obviously not had the intention to subvert or disrupt these proceedings, but merely an oversight on his part—certainly not intentional.

First I would ask whether or not you can disregard the statement made by him, which, of course, is nothing more than a bald statement in this court at this time, and has no value whatsoever on the nature of what was said, if anything, on the phone between Captain CASSIDY and some party that may have called. Now I will start at the far end there. Lieutenant, do you feel you can put what has happened in this court out of your mind, and proceed to hear the facts that come before this court from now on with impartiality?

The judge then conducted an individual *voir dire.* Of the five members, only one expressed any confusion about the instruction, and all affirmatively stated that they could follow the military judge's instruction to ignore the comments at issue. However, the military judge sensed some confusion by one of the members and resumed questioning that member in the presence of the acknowledgedly untainted members.

MJ: Regarding your question, Captain WHITEHURST, I am a little concerned by your asking the question—or stating you may be unable to disregard.

By disregard—this is to each of you—I mean disregard totally any mention of the telephone call which was brought up. Whether or not such evidence can legitimately be brought up before this court, concerning any matter which has not been brought up before this court is an open question, I would have to rule on that as it came up. I cannot make a determination on that. I am a little concerned that if you think that it is all that important—that it might have some effect . . .

MEM: (Captain WHITEHURST) Well, to clarify my point, Your Honor, it in no way would interfere with my own judgement of the evidence presented, by the rules of evidence in this case. My curiosity was aroused, but—anyway—as to whether or not such ac-

tion may be taken to introduce that evidence, in the event of the conversation between trial counsel—the prosecutor and youself, that no further action is going to be taken along these lines, this I can accept—the judgment of the court. Does that make it clear?

MJ: I understand your position.

Captain Whitehurst apparently had resolved his initial confusion and declared that he would be able to follow the judge's instruction. Despite this announcement, the judge declared a mistrial. The mistrial had been declared *sua sponte*, and the record does not indicate any exchange between the bench and counsel immediately preceding the court's decision. Prior to the *voir dire*, the defense counsel had stated that he believed that an instruction would sufficiently cure the perceived problem. It is unclear as to what the government counsel would have suggested in addition to the instruction, but neither side sought a mistrial.

Under the circumstances we find that the trial judge, at the original trial, abused his discretion in the *sua sponte* declaration of mistrial since there was no *manifest necessity* for doing so. Any problem remaining over Captain Whitehurst's indication of "curiosity" over the matter, notwithstanding his categorical assertion that he could unqualifiedly follow the instructions and judgment of the court in making his [Captain Whitehurst's] impartial determinations in this case, could have been alleviated by excusing the member. (A remedy, however, which did not seem at all necessary in light of that member's responses to the trial judge's *voir dire*).

The bar against former jeopardy finds its origin well back into biblical times and in ancient judicial systems that predate the birth of Christ. It is not necessary to render a lengthy discourse concerning the genesis, evolution, and history of this highly respected safeguard in the law to appreciate its application to the case at bar.

Paragraph 56e, *Manual for Courts-Martial*, 1969, (Rev. ed.), provides that "[t]he

military judge .. . may as a matter of discretion declare a mistrial when, after considering all the circumstances, that action is *manifestly necessary* in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the trial." (Emphasis added). In American law, the fountainhead of constitutional law on the subject is *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824). Josef Perez had been placed on trial; however, the jury was unable to agree on a verdict and were eventually discharged by the judge. The accused then brought proceedings to bar a second trial. He claimed that a subsequent proceeding would violate the constitutional bar. The circuit judges divided as to opinion, and the case was argued before the Supreme Court. Mr. Justice Story, speaking for the Court, held that the Fifth Amendment would not bar a retrial. The Court recognized that:

> "the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere." [*United States v. Perez*, 9 Wheat. at 580].

The Court quickly noted, however, that sound discretion should be used by a judge and warned against abuse:

> "To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner."

The concept of former jeopardy was held applicable to the military in *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). The Court in *Wade* recognized that the exigencies of war might require that a mistrial be declared or charges withdrawn over the objection of the accused. The same *manifest necessity* rule used in federal jurisdictions is thus required in a court-martial. The Court quoted extensively from *Perez* in the *Wade* case and concluded that they saw "no reason why the same broad test should not be applied in deciding whether court-martial actions run counter to the Fifth Amendment's provision against double jeopardy", *Wade v. Hunter, supra*, at 690, 69 S.Ct. at 838.

■ The government erroneously asks this Court to find that the appellant failed to sustain the "burden of proof" in alleging the abuse of discretion on the part of the original trial judge in declaring the mistrial *sua sponte*. The staff judge advocate, in his cursory review for the supervisory authority on this issue, made the same error. The record of the original proceedings ending in a mistrial was incorporated into the overall record of *both* trials. That record *per se* furnishes more than sufficient evidence to meet any "standard or burden of proof" whatever that may have been on the part of the appellant, if any.

In *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), Justice Harlan, speaking for the United States Supreme Court, held that the district judge had abused his discretion by declaring a mistrial so that government witnesses could consult with their attorneys. The Court went on to hold that a retrial would be prohibited. It is important to note that the Court's analysis of the issue centered upon the correctness of the judge's ruling and what the Supreme Court felt were the superior options available to the district court.

Likewise, the Court in *Jorn* made no mention that the burden of proof was upon the accused. Instead, the Court focused upon whether there was "manifest necessity" to declare the mistrial. Although older cases seem to place the burden of proof upon the accused, it may be that when the issue may be resolved on legal, as opposed to factual grounds, that the burden should rest upon the government to show that "manifest necessity" demanded that a mistrial be declared. *Compare United States*

v. *Kin Ping Cheung*, 485 F.2d 689 (5th Cir. 1973), and *Carsey v. United States*, 129 U.S. App.D.C. 205, 392 F.2d 810 (1967), *with Dillon v. United States*, 218 F.2d 97 (8th Cir. 1955), *cert. granted*, 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248 (1955), *cert. dismissed*, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955), and *United States v. Potash*, 118 F.2d 54 (2d Cir. 1941), *cert. den'd.*, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540 (1941).

· The concept of judicial discretion had been most limited when the appellate court has found that the judge's decision was based on an error of law or that a less cataclysmic solution was available, *United States v. Jorn, supra; Carsey v. United States, supra.* As the circuit court in *Kin Ping Cheung, supra*, concluded, the trial judge erred in failing "to consider alternatives to declaring a mistrial." 485 F.2d at 691. The Court noted:

> "Here, he declared the mistrial during the first trial without due consideration of the defendants' interest in having their guilt or innocence determined at *that* trial. The importance of this kind of consideration was established by the Supreme Court's decision in *United States v. Jorn*, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543." [Emphasis supplied by Court].

■ As appellate defense counsel wisely notes in the instant case, the issue before this Court is not only capable of detailed appellate review, but it is also one in which an unexplored alternative existed. The factual circumstances surrounding the judge's declaration are all recorded; thus, unlike the case in *Perez*, here the judge's decision is amenable to a legal analysis. Resolution of the issue herein presented may therefore be determined by balancing the correctness of the judge's decision against the right of the accused to have his fate decided in the original proceeding.

■ Since the record furnishes all of the information and evidence necessary to make a legal analysis of the judge's decision, the only issue left for resolution then is: was there a manifest necessity for the *sua sponte* declaration of mistrial? Assuming for argument sake that the "curious" member, Captain Whitehurst, was subject to challenge—which is doubtful—was it necessary for the judge to "excuse" by the draconian remedy of mistrial the whole array of veniremen already sitting in the case? The question, of course, drives its own answer, since it is patently obvious that it was not necessary to eliminate all of the members in order to eliminate the one about whom the judge had some "misgiving."[2] Even with that member excused, four other members remained who were untainted and who would comprise more than a jurisdictional quorum. Thus the correct decision of the trial judge was not to declare a mistrial, but to continue with the four members about whom the record clearly evinces that there was no necessity to remove from the case by declaring a mistrial. *Cf. United States v. Waldron*, 15 U.S.C.M.A. 628, 36 C.M.R. 126 (1966).

Thus, we find that in the instant case there was no plain or obvious "manifest necessity for the mistrial." Here, a viable and legally preferred alternative was available. But instead of leaving Captain Whitehurst as a member or, in the alternative, excusing that member, the trial judge ignored the accused's right to have his guilt determined by the remaining members about whom there was no question. As such, the judge abused his discretion in declaring the mistrial. As a result, the appellant was subjected to jeopardy a second time and his plea in bar of the second trial was improperly denied with respect to the marijuana charge and the larceny charge. The question that remains,

---

**2.** At issue was whether the individual members could faithfully follow the instruction of the military judge. If so, the instruction of the military judge to disregard the conversation between the judge and the defense counsel was sufficient to preserve the impartiality of the court. Here, four out of the five members made unequivocal statements that they could follow the military judge's instruction. Further, the record does not reveal that the judge had the least qualm over the sincerity of the four unaffected members, *United State v. Simonds*, 15 U.S.C.M.A. 641, 36 C.M.R. 139 (1966).

however, is what, if any, effect this had on the new charge of obstructing justice, to which the appellant entered a guilty plea, and which charge had not been before the first court-martial.

■ While it appears at first blush that the appellant was not put in jeopardy twice on the obstruction charge, having only been charged once in that fashion, and only at the second trial, the issue circumscribing that offense is whether that charge is so inexorably intertwined with the proceedings of the first trial as to, in effect, subject the appellant to jeopardy a second time at a second trial which trial *included all of the prior charges* involved in the obstruction offense, i. e. the drug and larceny offenses. out of which the alleged obstruction of justice arose.

The answer would be easy to arrive at if we could say with certainty that the appellant would not have been later charged with obstruction of justice in spite of the defense that he himself imposed at the first trial on the drug and larceny charges, that is that someone else (Stouffer) did it and all appellant did was lie about it in a sworn statement to the criminal investigators. We are not certain of this, however, and cannot be even if the first trial had not been erroneously terminated and the appellant had been able to continue with that trial for better or worse. Thus, it appears that even if the appellant had received the full measure of his day in court at the first trial and had been convicted or acquitted of the drug and larceny charges, he still could have faced the potential of a second trial on the obstruction of justice charge which came to light as a result of his own presentations on defense.

Accordingly, the question remains, was the appellant subject to jeopardy a second time on the obstruction offense—which was not in issue at the first trial—when that offense was coupled at the second trial with the drug and larceny offenses that were in issue at the first trial and which first trial was erroneously terminated by an incorrect declaration of mistrial? We think not, and we find that the appellant was not subject to jeopardy on the obstruction charge at the second trial notwithstanding that he was so jeopardized with respect to the drug and larceny charges. Those latter two charges have been disposed of by a finding of not guilty at the second trial (as was a fourth charge not relevant here). Thus the error in re-referring those charges to a second trial which compounded the error committed through the declaration of mistrial at the first trial did not divest the second court-martial of jurisdiction to determine the guilt or innocence of the appellant on the obstruction of justice charge.

■ However, it is obvious that the appellant was faced with a *Hobson's* choice of pleading guilty to the obstruction charge at the second trial in order to avoid retrial on the merits of the larceny and drug charges which never should have gone to a second trial, or else face trial on all the charges referred to the second trial. While the jurisdictional maximum on the sentence imposable by the court-martial was the same whether the appellant was convicted of one or all of the charges, the prospect of getting the maximum by running the risk of a not guilty plea on all the charges rather than pleading guilty to only the obstructing of justice charge and making the deal with the convening authority for suspension of certain aspects of any awarded sentence, seriously raises the question of the providency of the appellant's plea to the obstruction charge at the second trial. It is more than likely that the plea was coerced by the continued presence of the original drug and larceny charges and the need for the appellant to secure the best possible result for himself through an agreement which provided, *inter alia,* for a lack of prosecution of those offenses.

Under the circumstances we find the plea of the appellant to the obstruction of justice charge to be improvident, and the findings and sentence are set aside. The marijuana charge, the larceny charge, and a fourth charge, alleging a wrongful impeding of an investigation, resulted in an acquittal of the appellant and those charges may not be retried under any circumstances.

■ The record of trial is returned to the Judge Advocate General of the Navy for appropriate disposition. A rehearing may be authorized on the obstructing of justice charge if considered appropriate.[3]

Judge MALLERY and Judge GREGORY concur.

LT Paul C. Hurdle, III, JAGC, USNR, Appellate Defense Counsel.

LT Patrick A. Fayle, JAGC, USN, LT Steven D. Moore, JAGC, USNR, Appellate Government Counsels.

---

3. Appellate defense counsel advises this Court that the appellant was "released from active duty on 7 January 1977." We have no supporting evidence in the record to corroborate that assertion, but if it is correct, a jurisdictional issue would arise in the event a rehearing is ordered. Determination of the appellant's status and amenability to trial by court-martial is necessary as a preliminary matter before further action, if any, is taken by the convening authority with respect to any rehearing in this case.