RONALD SIGISMONA CAREY, LEON EDISON CLARK, MOMOLU J. S. SIRLEAF, CHARLES ALEXANDER SNETTER AND RICHARD JAPPAL SNETTER v. STATE OF MARYLAND

[No. 323, September Term, 1975.]

*Decided March 24, 1976.*

The cause was argued before MORTON, MENCHINE and MELVIN, JJ.

*Michael Bowen Mitchell,* with whom was *Harry A. E. Taylor* on the brief, for appellants.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Daniel Cassidy, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellants, charged with disorderly conduct and related offenses, were being tried before a jury in the Circuit Court for Prince George's County on February 26, 1975. After two police officers had testified at length for the State, the presiding judge recessed the trial for lunch. Upon reconvening court, the judge called respective counsel to the bench and announced for the record:

> "THE COURT: I want to get this on the record that during the noon recess Mrs. Montcalm [deputy clerk of court] sent a member of the jury over to my chambers. I did not see him. He talked to my secretary. We checked back with Mrs. Montcalm and what he stated to her was that having heard this much of the case he had already concluded because of some previous experience that he had had that he would not be able to believe the police witnesses in this case.
>
> When I first heard about this I called counsel to my chambers and informed them of the situation. I did not know the full particulars but without telling counsel which position he was taking I told them if under the circumstances they would be willing to go ahead with 11 jurors. Mr. Mitchell [counsel for appellants] conferred with his clients and said that he would not be willing to go ahead with 11 jurors and has a perfect right to take that position, and what that leaves is a situation where one of the 12 jurors has already expressed an opinion without having heard the entire case or instructions or argument.
>
> Under those circumstances my conclusion is that

one of the most important functions of the Court is to see that a fair trial is afforded everyone concerned, that this could not be a fair trial from this point on.

Therefore, I propose to declare a mistrial and have the matter set for a later time.

\* \* \*

"THE COURT: Do you want to correct any statement that I have made on the record?

MR. MITCHELL: Just with one respect to the — well, I was just leading up to a request that we are only going on hearsay, number one, at this point of what, if anything, this juror said, because it comes by way of Mrs. Montcalm through His Honor. Mrs. Montcalm I respectfully request be allowed to put this on the record and also the juror if necessary, and I am not trying to be hypertechnical, but I think that Mrs. Montcalm's talking with a juror who has already been sworn about a case was in violation of the sequestration, number one, and also —

THE COURT: Maybe so, but jurors talk to them about getting excused and they are not feeling well and they are sick.

MR. MITCHELL: But with respect to matters —

THE COURT: A whole lot of things like that you would not know until he blurted out what it was, but she certainly does not. She never says anything about any pending case to the jury.

\* \* \*

"MR. MITCHELL: I would just like to add one thing to Mrs. Montcalm's statement. In His Honor's office she said he thinks that it is a possibility and at this point he thinks. There was nothing definite made he could not reach a decision."

A mistrial was then declared and the jury was dismissed.

Sometime later appellants filed a motion to dismiss the charges against them on the ground that a retrial of the charges would violate their Fifth Amendment constitutional right against double jeopardy. *Benton v. Maryland*, 395 U. S. 784 (1969). The presiding judge denied the motion to dismiss and this appeal followed.

At the outset it is clear that jeopardy had attached to the appellants at their trial on February 26, 1975, for the jury had been impanelled, sworn and two witnesses had testified. *See Jourdan v. State*, 275 Md. 495 (1975). Secondly, it is equally clear that the appellants did not consent to the declaration of the mistrial. The trial judge acted *sua sponte*. *See Cornish v. State*, 272 Md. 312 (1974). Thus, we are confronted with the determination of whether the Fifth Amendment's prohibition against double jeopardy bars a retrial of the charges against appellants and this, in turn, "depends upon the reasons for and circumstances surrounding the mistrial declaration." *Jourdan, supra,* at 508.

Judge Eldridge, writing for the Court in *Jourdan* after referring to *Cornish, supra,* stated at 510:

> "We pointed out that since the opinion of Mr. Justice Story, in *United States v. Perez*, 9 Wheat. 579, 580, 6 L. Ed. 165 (1824), it has been settled that the constitutional prohibition against double jeopardy permitted a retrial following a mistrial only if there was 'manifest necessity' for the mistrial, and that the discretionary power of a court to declare a mistrial 'ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.' "

*See also U.S. v. Dinitz,* 44 U.S.L.W. 4309 (U.S., March 8, 1976).

Here, we think it is apparent that there was no demonstration of "manifest necessity" for the mistrial. The trial judge had before him only the statement of a deputy clerk of court that a juror had told her that he would not be able to believe the police witnesses in the case. We do not

have before us what the clerk actually related to the judge. We have only the judge's interpretation of what she told him. The deputy clerk directed the juror to the judge's chambers but, apparently, he was permitted to talk only with the judge's secretary. No one, including the judge, knew the actual attitude, position or alleged bias of the juror in appraising the evidence or whether he could or could not, in fact, render an impartial and objective verdict in the case. There was no sworn testimony on the issue. All of the evidence was pure hearsay. The judge himself stated "I did not know the full particulars * * * " and we are left to conjecture and speculation.

Under the circumstances, we think that the judge acted precipitously and without a sufficient foundation of facts upon which to formulate a judgment that the declaration of a mistrial was manifestly necessary. Otherwise stated, the judge violated the admonition of the Supreme Court in *United States v. Perez*, 9 Wheat. 579 (1824) that the discretionary authority to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances and for very plain and obvious causes." Subjecting these appellants to a retrial of the charges for which they went to trial on February 26, 1975, would place them twice in jeopardy in violation of their constitutional right against being placed in double jeopardy. Their motion to dismiss the charges should have been granted.

*Judgment reversed; costs to be paid by Prince George's County.*