RONALD HARRISON REEMSNYDER *v.* STATE OF
MARYLAND

[No. 1308, September Term, 1979.]

*Decided July 11, 1980.*

The cause was argued before THOMPSON, MELVIN and
WILNER, JJ.

*Edward P. Camus* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Stephen B. Caplis, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Barry Hamilton, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This case concerns the question of double jeopardy after a mistrial has been declared over the objections of an accused. Ronald Harrison Reemsnyder, appellant, and a co-defendant, Clyde Brewer, were charged with first degree sexual offenses and related offenses. After a nine-day trial in the Circuit Court for Montgomery County (William B. Cave, J.), the case was submitted to the jury at 1:22 p.m. August 10, 1979. At 10:25 p.m. the court reconvened without the jury and the following occurred:

> "The Court: I guess the record ought to reflect the sequence of events that have transpired: Juror, Elmer Jones, complained of either pains or breathing difficulties, some discomfort. The rescue squad, having been called, Mr. Jones was transported to Suburban Hospital.
>
> The Court has, five minutes ago, contacted the emergency room and has been informed that Mr. Jones has been admitted into the coronary care unit for observation but has been admitted into the hospital and has, therefore, become unavailable to continue as a juror in the deliberation in this matter."
>
> \* \* \*
>
> "Mr. State.
>
> Mr. Hamilton: Your Honor, at this time, the State would request that the Court order the suspension, continue, the suspension of the jury's deliberation

and adjourn these proceedings until Monday morning.

It would request that the jury be reassembled Monday morning and that we then make a determination as to the availability or lack of Mr. Jones."

\* \* \*

"Mr. Camus: [Attorney for appellant] I don't know why Monday is the key day. I recognize that the juror took ill and the other eleven members have been instructed by the Court not to deliberate. I have always found and felt that once jurors are exposed again from the sanctity of the jury room to normal day problems of life that they discuss what has been happening and are influenced in some way by extraneous matters other than deliberations.

However, I realize that the Court is in a position to decide what is best. I would like us to continue, if the Court feels that is warranted, on a day by day basis. Just taking two days, eleven jurors separated from what has gone on now from roughly 2:30 — it is now 10:30 — except for the dinner hour, and then after seven hours of obviously heated deliberations, coldly separate them for two days, I don't think would result in any justice to Mr. Reemsnyder.

So, I think the State's suggestion of just coming back Monday without any medical reason, I think we ought to, on a daily basis respond and have a report in reference to that juror, and then knowing what the facts are, can take a position as I see fit at that time.

The Court: Well, it is clear that the juror is unavailable at least until Monday, and no indication that the diagnosis or prognosis may be then or thereafter.

Mr. Camus: I would ask, therefore, if you are going to use Monday for the guideline that this jury

be sequestered so that the outside influence, other than themselves, is totally minimized."

\* \* \*

"The Court: I would at least give some serious consideration to that if it were not for the fact that there is not any indication of a strong likelihood that Mr. Jones will be available Monday or indeed be available at all for further service on this jury panel.

Consequently, it would be, keeping in mind the paramount importance is the rights of the Defendants in this matter, and balancing those considerations, it would not appear to serve any useful purpose to sequester them on, at best, a slight possibility that he may some time in the future become available.

My contact with the emergency room, a Nurse Ridgeway, in response to my question is there a possibility that he would be available in the near future for further service on this jury, without stating any further reasons or what she bases it on, simply said, no.

It therefore appears to the Court that at this time we are down to eleven jurors. We no longer have the availability of the twelfth.

I really feel no alternative other than to declare, for the record, at this time, the loss of one juror, and, gentlemen, we now have a panel of eleven.

Mr. Hamilton: For the record then, pursuant to Maryland Rule 751 a, the State would consent to the cause continued to be deliberated by a panel of eleven jurors as to both Defendants."

\* \* \*

"Mr. Camus: On behalf of Mr. Reemsnyder we do not consent to eleven jurors.

The Court: All right. Then I inform Mr. Reemsnyder, since it is his constitutional choice, that the Court is faced with no alternative other than to either proceed with eleven by consent of the

parties or declare a mistrial, and I am aware of the fact, the record will reflect, you have had an opportunity to discuss this fully with your client, Mr. Camus.

Mr. Camus: Yes, I have, Your Honor, and I would like to, if the Court decides, I would like, I will put it on the record now.

The Court: All right, sir.

Mr. Camus: I do not, in any way, on behalf of Mr. Reemsnyder, agree to the granting of a mistrial. I feel that under the Constitution he has put himself upon the country, that he has exposed himself to trial, and it has lasted two weeks basically, having started a week ago Tuesday; that the State has had its opportunity to prosecute him; that he elected to go with a jury trial of his peers; and that there is no manifest necessity under the Constitution, would be exposing himself to double jeopardy, and in no way consents to the granting of a mistrial."

\* \* \*

"The Court: It is obvious with respect to Mr. Reemsnyder I find myself in the position of not having enough jurors to continue his trial and having the objection to the Court declaring a mistrial. I, therefore, am in a position I cannot go backwards nor forward nor stay where I am."

\* \* \*

The Court: Let me ask what is counsel's position with respect to independent deliberation with respect to both Defendants?

Mr. Camus: Would you say that again?

The Court: What is counsel's position with respect to independent deliberations with respect to each Defendant, that is, if the eleven remaining jurors were allowed to continue the deliberations only as to Mr. Brewer and allow them to recess with respect to Mr. Reemsnyder until we had a definite

decision as to whether or not Mr. Jones would ever be available? "[1]

* * *

"(Whereupon, bench conference not reported.)

The Court: All right, gentlemen, it would appear then the only avenue open to the Court at this time is to request the jury to return Monday morning, at which time I will find out the availability of Mr. Jones."

On Monday, August 13, 1979, the Court reconvened and the following transpired:

"Gentlemen, for the record I again called Suburban Hospital this morning and was informed Mr. Jones is still in the Coronary Unit. The only information that they would give me was that he was still there and that everyone in there was carried as critical but without giving me any precise diagnosis or prognosis. In any event, from that information and the indication I have late Friday evening it appears that with respect to this jury that Mr. Jones has become disabled and can no longer participate in the deliberations. Mr. Camus?

Mr. Camus: My move?

The Court: Your move, sir.

Mr. Camus: Your Honor, Mr. Reemsnyder has put himself on the country and has stood trial for almost two weeks now basically, two weeks tomorrow. He totally and completely,. as do I, object to any granting of a mistrial. He has placed himself in jeopardy and in weighing against the public interest and his rights, I think his rights are paramount at this point and he elects not to go, as we indicated Friday, with 11.

The Court: All right. Mr. Reemsnyder, of course,

---

1. The offer was apparently declined at an unreported bench conference. The co-defendant, Brewer, elected to proceed with 11 jurors and was subsequently acquitted.

it is your election to proceed with the reduced panel of 11 and the corollary right not to proceed without the full 12. In the absence of the full 12 and in absence of a mutual consent to continue with the 11, then the Court would have no alternative other than to excuse the jury from its deliberations in your matter and declare unfortunately a mistrial.

Am I correct in my understanding that the representation of your counsel that it is your election not to proceed with less than the required 12 jurors?

Mr. Reemsnyder: Yes, I am going to follow my attorney's advice.

The Court: I assume you have thoroughly discussed it with your attorney?

Mr. Reemsnyder: Yes, Your Honor.

The Court: All right. Then the Court sees no alternative other than to declare the mistrial since those are the only two available options, either to proceed with 11 or to declare a mistrial. Obviously we cannot do both, and the Court therefore insofar as the State of Maryland versus Ronald Reemsnyder declares a mistrial and the matter will be set for retrial."

A motion to dismiss the indictment based upon double jeopardy was filed by the appellant. The present appeal is from the trial court's denial of that motion.

## The Law

The prohibition against double jeopardy precludes a retrial after a mistrial declaration unless there is "manifest necessity" for the mistrial, or unless the accused consents to a mistrial. *Cornish v. State,* 272 Md. 312, 322 A.2d 880 (1974). In *United States v. Perez,* 9 Wheat. 579, 6 L. Ed. 165 (1824), the Court set forth the test for declaring a mistrial based on manifest necessity. The Court stated:

"We think, that in all cases of this nature, the law

has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. ... But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." *Id.* at 580.

The majority of cases have held that the illness of a juror justifies a discharge of the jury and declaring a mistrial. *See, Oelke v. United States,* 389 F.2d 668 (9th Cir. 1967), *cert. denied,* 390 U.S. 1029, 88 S. Ct. 1420, 20 L. Ed. 2d 286 (1968); *United States v. Potash,* 118 F.2d 54 (2d Cir.), *cert. denied,* 313 U.S. 584, 61 S. Ct. 1103, 85 L. Ed. 1540 (1941); *United States v. Holland,* 378 F. Supp. 144 (E.D. Pa.), *aff'd sub nom Appeal of Ehly,* 506 F.2d 1050 (3d Cir. 1974), *cert. denied,* 420 U.S. 994, 95 S. Ct. 1433, 43 L. Ed. 2d 676 (1975); *People v. Upshaw,* 13 Cal. 3d 29, 528 P.2d 756, 117 Cal. Rptr. 668 (1974); *Finton v. State,* 244 Ind. 396, 193 N.E.2d 134 (1963); *State v. Kappen,* 191 Io. 19, 180 N.W. 307 (1920); *State v. Reed,* 53 Kan. 767, 37 P. 174 (1894); *Baker v. Commonwealth,* 280 Ky. 165, 132 S.W.2d 766 (1939); *State v. Miller,* 331 Mo. 675, 56 S.W.2d 92 (1932); *People v. Rial,* 25 A.D.2d 28, 266 N.Y.S.2d 426 (1966); *State v. Ledbetter,* 4 N.C. App. 303, 167 S.E.2d 68 (1969); *Commonwealth v. Kent,* 355 Pa. 146, 49 A.2d 388 (1946); *State v. Nelson,* 19 R.I. 467, 34 A. 990 (1896); *State v. Emery,* 59 Vt. 84, 7 A. 129 (1886). *See also, Annot.* 125 A.L.R. 694 (1940) and S. Schulhofer, *Jeopardy and Mistrials,* 125 U. Pa. L. Rev. 449 (1977).

Determination of whether manifest necessity exists is within the sound discretion of the trial judge, *United States v. Perez, supra; Arizona v. Washington,* 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *United States v. Jorn,* 400 U.S. 470, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971); *Cornish v. State,* 272 Md. at 316.

## Alternate Courses

Appellant argues the trial judge did not consider alternate courses as he is required to do. We do not see the situation that way. The Court of Appeals in *Cornish v. State, supra* at 370, stated:

"And a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem, *United States v. Jorn, supra; United States v. Beasley,* [479 F.2d 1124 (5th Cir. 1973), *cert. denied* 414 U.S. 924 (1973)]; *United States v. Kin Ping Cheung,* [485 F.2d 689 (5th Cir. 1973)]; *United States v. Tinney,* 473 F.2d 1085 (3d Cir. 1973), *cert. denied* 412 U.S. 928, 93 S. Ct. 2752, 37 L. Ed. 2d 156 (1973)."

We have quoted at length from the transcript to show that the trial judge did consider all viable alternatives. We do not think that the judge abused his discretion in refusing to accept the appellant's suggestion that the remaining eleven jurors be sequestered and the case continued from day to day until further information was obtained as to the sick juror's prognosis, particularly after the case had already been continued from Friday until Monday.[2] It would appear to us

---

2. Md. Code, Courts & Judicial Proceedings Art. § 8-304 provides as follows:

"The jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or may be kept in charge of proper officers."

that the record sufficiently indicated that the ability of the ill juror to return to his duties within a reasonable time was unlikely.

––––––

The statute was construed in Midgett v. State, 223 Md. 282, 164 A.2d 526 (1960):

> "We think it clear that under Code (1957), Art. 51, Sec. 29, [now codified as Courts & Judicial Proceedings Art. § 8-304] and under La Guardia v. State, 190 Md. 450, 58 A.2d 913, the separation of the jury is permissible, in the discretion of the trial court, prior to submission, and that prejudice is not to be presumed from such separation simply because of the possibility of influence or contamination through outside contacts. The next question (assuming an absence or lack of adequate caution) is whether such a defect (a) presents an irregularity which is waived if not objected to in the trial court or (b) presents a situation in which either the State must rebut or the defendant must show prejudice. We think that it does not present an error which is so fundamental that it could not either be waived or be disposed of as a matter of proof or of the burden of proof.
>
> In Kennard v. State, 177 Md. 549, 10 A.2d 710, which was a misdemeanor case, the trial court permitted a separation of the jury after the verdict had been agreed upon, but before it had been rendered. This court viewed the matter as a question of prejudice, vel non, and not as a matter of a denial of a fundamental right, and though expressing disapproval of permitting separation after submission, if found that no prejudice to the defendant has resulted and upheld the conviction. . . ."

\* \* \*

> "As to separation, the Court [in La Guardia v. State, supra at 456] refused to recognize any presumption of prejudice and said, on the contrary: 'The complaining party relying upon a violation of the rule against separation of jurors has the burden of showing that the protection intended to be afforded by the rules was lost; \* \* \*.' The specific holding was that an emergency separation of a juror from the other members of the panel because of sudden illness, where the circumstances indicated that he had no communciation with any outsider except a physician, was not such a separation as would invalidate the verdict." Id. at 295-297.

Courts frequently draw a distinction between various types of criminal cases. Annot. 72 A.L.R.3d 248 (1976). Apparently, Maryland draws no such distinction. Midgett v. State, 223 Md. at 293:

> "More significantly, it is to be noted that the statute makes no distinction between different types of criminal cases. The rule is the same for capital cases, for noncapital felonies and for misdemeanors."

## Hearsay Evidence

Appellant, relying primarily on *Jourdan v. State,* 275 Md. 495, 341 A.2d 388 (1975) and *Carey v. State,* 30 Md. App. 594, 353 A.2d 650 (1976), argues that the hearsay statements in the instant case were insufficient to support factual findings of manifest necessity to properly declare a mistrial. We do not think either *Jourdan* or *Carey* are controlling in the case at bar. In *Jourdan* the sickness of the prosecutor was held to be insufficient to justify a declaration of a mistrial, because the case was simple and the record showed that another prosecutor could have been found quickly to proceed with the case. In *Carey,* the Court held that a hearsay statement from a court clerk regarding a juror's inability to believe police testimony was an insufficient basis to grant a mistrial. We do not consider *Carey* as standing for the position argued by appellant that hearsay evidence is never sufficient to justify a trial judge in declaring a mistrial.

In any event, there was no objection to the use of hearsay evidence and if such evidence is admitted without objection it can support judicial action. *Laporte Corporation v. Pennsylvania-Dixie Cement Corporation,* 164 Md. 642, 649, 165 A. 195 (1933); *Robinson v. State,* 17 Md. App. 451, 462-3, 302 A.2d 659 (1973). It would have been a simple matter for the court to have called the doctor to give testimony as to the juror's condition, if this objection had been made below.

> *Denial of double jeopardy motion affirmed.*
> *Appellant to pay the costs.*