# IN RE: MARK R.

[No. 49, September Term, 1981.]

*Decided September 3, 1982.*

The cause was argued before Murphy, C. J., and Smith, Digges, Eldridge, Cole, Davidson and Rodowsky, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

Eldridge, J., delivered the opinion of the Court.

This case concerns the applicability of the Double Jeopardy Clause of the Fifth Amendment to juvenile delinquency adjudicatory hearings conducted by masters.

Mark R., a juvenile, was charged in the Circuit Court of Baltimore City with being a delinquent child. The charge was based on the allegation that Mark stole a box, containing two or three dollars, from the counter of a store owned and operated by Eu Ja Lee.

An adjudicatory hearing was held on April 15, 1980, before a juvenile master (Master Briscoe).[1] The State's first witness at the hearing was a police officer. Following the officer's testimony, the State put on its principal witness, the victim Eu Ja Lee. After Ms. Lee completed her testimony on direct examination, and during cross-examination by Mark's attorney, the juvenile master "sua sponte, declared a mistrial." The reason given by the master for declaring a mistrial was "that Ms. Lee did not have a satisfactory comprehension and ability to communicate in the English language." The stipulation of facts indicates that both sides were surprised by the mistrial declaration and that neither consented thereto. The docket entry regarding the April 15th adjudicatory hearing states in part: "Mistrial; Reset before another Master and arrange for Korean Interpreter for victim."

Another adjudicatory hearing was held on April 29, 1980, before a different master (Master Cooksey). The State had arranged for an interpreter to be present. At this hearing, after the State's first witness was sworn, the defendant moved to dismiss the juvenile petition on grounds of double jeopardy and due process.[2] The theory of the motion was that there had been no "manifest necessity" for the mistrial

---

1. Despite the requirement in Maryland Code (1974, 1980 Repl. Vol.), § 3-813 (b) of the Courts and Judicial Proceedings Article, that proceedings before juvenile masters be recorded, the proceedings and testimony at the April 15, 1980, adjudicatory hearing were apparently not recorded. Nevertheless, the parties have stipulated as to what occurred at that hearing. Additional facts concerning the trial court proceedings in this case are taken from statements of fact in the various briefs and memoranda filed by the parties. There are no disagreements between the two sides concerning what took place in the trial court.

2. The record also contains no transcript of the proceedings at the April 29th adjudicatory hearing. Although we know from the parties' statements of fact that the State's first witness was sworn, it is not clear whether that witness began to testify. Trial counsel for the juvenile was apparently of the belief that a motion to dismiss on the ground of a second trial forbidden by double jeopardy principles, could not be made until the attachment of jeopardy at the second trial. Of course, such a motion can be filed before the commencement of the second trial, and, if it is filed before the second trial, the denial of the motion is immediately appealable. *See* the discussion in Pulley v. State, 287 Md. 406, 412 A.2d 1244 (1980). As to when jeopardy attaches at a nonjury trial, *see* Blondes v. State, 273 Md. 435, 330 A.2d 169 (1975).

declaration, and that, therefore, a second adjudicatory hearing would constitute a successive prosecution precluded by the Double Jeopardy Clause of the Fifth Amendment and by due process principles. The master granted the State's motion for a postponement of the hearing in order that the State could prepare a memorandum in response to the motion to dismiss. For reasons not shown in the record or the parties' statements of fact, there were no further proceedings before a master.

On May 12, 1980, the court, presided over by a judge (Hargrove, J.), heard argument on the juvenile's motion to dismiss. The court denied the motion to dismiss, relying on *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). The court indicated that, under the Supreme Court's *Swisher v. Brady* opinion, an adjudicatory hearing before a master is not final and will not become final until there is a decision by a trial judge. On this theory, the trial judge concluded that successive adjudicatory hearings before *masters,* or an adjudicatory hearing before a master and a later adjudicatory hearing before a judge, do not violate the double jeopardy prohibition against successive trials.

Following the denial of the motion to dismiss, the trial judge proceeded to hold an adjudicatory hearing.[3] The State's witnesses, Eu Ja Lee and an interpreter, were sworn. Ms. Lee testified anew although this time with the aid of the interpreter. On direct examination, Ms. Lee described placing the box containing money on her store counter and testified to seeing Mark take the box. After cross-examination and re-direct examination of Ms. Lee, and after the testimony of several defense witnesses, the trial judge found that Mark had taken the money. At a disposi-

---

**3.** Whether this hearing should be regarded as a third adjudicatory hearing, or as a continuation of the second adjudicatory hearing which commenced on April 29, 1980, before Master Cooksey, is immaterial and need not be explored in this case. If Mark's constitutional argument is sound, any adjudicatory hearing following the mistrial declaration on April 15, 1980, would have been precluded. On the other hand, if the State's position is sound, neither the proceedings on April 29th nor the adjudicatory hearing on May 12th would have been prohibited.

tional hearing one month later, the trial judge placed Mark on probation.[4]

The Court of Special Appeals affirmed in an unreported opinion, although its reasoning differed somewhat from that of the trial judge. The intermediate appellate court initially took the position that *Swisher v. Brady,* relied on by the trial judge, was "not apposite." The court then indicated that the critical factor was the *"time* when jeopardy first attache[d]." The Court of Special Appeals stated that, "despite the pronouncement in *Breed* [*Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975)] that '[j]eopardy attached . . . when the Juvenile Court, as the trier of the facts, began to hear evidence,' 421 U.S. at 531, we observe that the Court of Appeals in *Matter of Anderson,* 272 Md. 85 (1974), *cert. denied,* 421 U.S. 1000 (1975), stated . . . 'that a hearing before a master is not such a hearing as places a juvenile in jeopardy.'" The Court of Special Appeals, on the basis of the quoted language from *Anderson,* held that "no double jeopardy problem arises here."

Because of the obvious importance of the constitutional issue presented, we granted Mark's petition for a writ of certiorari. We shall reverse.

## I.

As we pointed out last year in *Ward v. State,* 290 Md. 76, 85-86, 427 A.2d 1008 (1981), very early in the history of this country, courts developed the rule that, because a criminal defendant was entitled to a verdict once his trial began, if that trial "were aborted by certain actions of the court or prosecutor without the defendant's consent, thereby depriving him of his right to a verdict, then the prohibition against double jeopardy would preclude a *subsequent* trial. This principle was applied when the trial was aborted either by the prosecutor's entering a nolle prosequi or otherwise abandoning the prosecution, or by the court's declaring a

---

4. Unlike the adjudicatory hearings before the two masters, the arguments and adjudicatory hearing before the judge on May 12, 1980, as well as the dispositional hearing, were transcribed.

mistrial without a 'manifest necessity' for so doing (whether *sua sponte* or upon the prosecutor's motion)." We indicated in *Ward* that one of the principal considerations underlying this rule was the unfairness in permitting a trial to be aborted without the defendant's consent, thereby possibly giving the prosecution a more favorable opportunity to convict the defendant at a later date. 290 Md. at 87-88.

Recently, in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Supreme Court summarized the reasons for precluding a second trial where the defendant's first trial was terminated by a mistrial without his consent (434 U.S. at 503-507):

> "Because jeopardy attaches before the judgment becomes final, the constitutional protection [against double jeopardy] also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.
>
> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused.... Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he

is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant.

The words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden. For that reason Mr. Justice Story's classic formulation of the test [in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824)] has been quoted over and over again to provide guidance in the decision of a wide variety of cases."

While observing that the "manifest necessity" standard "can not be applied mechanically or without attention to the particular problem confronting the trial judge," the Court in *Arizona v. Washington* went on to state that "we require a 'high degree' [of necessity] before concluding that a mistrial is appropriate." 434 U.S. at 506. The Supreme Court indicated that the degree of discretion accorded a trial judge's decision to declare a mistrial varies with the particular situation. The Court first pointed to a situation failing to meet the "high degree" of necessity standard and where retrials following mistrials are prohibited (*id.* at 507-508):

"The question whether that 'high degree' has been reached is answered more easily in some kinds of cases than in others. At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this 'abhorrent' practice. . . . Thus, the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence. . . ."

The Court then described a situation "[a]t the other

extreme," namely a mistrial because of a hung jury, where the law allows "the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury. . . . The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Id.* at 509-510.[5]

The rule that a second trial is prohibited if the first trial is aborted by a mistrial without the defendant's consent and unsupported by "manifest necessity," is applicable to non-jury criminal trials as well as jury trials. *Cornish v. State,* 272 Md. 312, 322 A.2d 880 (1974).

In the case at bar, the petitioner, Mark R., contends that the rule is also applicable to an adjudicatory hearing in a juvenile delinquency case and that, as there was no manifest necessity for the sua sponte mistrial aborting the first adjudicatory hearing, the subsequent adjudicatory hearings were prohibited by the Fifth Amendment's Double Jeopardy Clause. It is also asserted that the successive hearings violated due process requirements.

The State, on the other hand, first contends that the rule precluding a retrial after an unnecessary and unconsented mistrial has no application to a juvenile delinquency adjudicatory hearing conducted by a master. Second, the State argues that even if the rule is applicable, there was "manifest necessity" for the mistrial declaration in the present case.

---

**5.** Other recent cases dealing with the permissibility of retrials following mistrials include Oregon v. Kennedy, U.S. , 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), *cert. denied* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed. 556 (1977); Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Pulley v. State, 287 Md. 405, 413-414, 412 A.2d 1244 (1980); Bell v. State, 286 Md. 193, 201-202, 406 A.2d 909 (1979); Jourdan v. State, 275 Md. 495, 341 A.2d 388 (1975); Cornish v. State, 272 Md. 312, 322 A.2d 880 (1974); Carey v. State, 30 Md. App. 594, 353 A.2d 650 (1976); Jones v. State, 17 Md. App. 504, 302 A.2d 638 (1973).

II.

The State's argument that the double jeopardy principle, which ordinarily precludes a retrial following an unconsented mistrial, has no application to a juvenile adjudicatory hearing conducted by a master, has two related prongs. Reflecting the position of the Court of Special Appeals, the State claims that jeopardy does not attach at an adjudicatory hearing before a master. Alternatively, the State agrees with the trial judge that the adjudicatory hearings before the two masters in this case and the hearing before the judge should be viewed as a single continuous proceeding. The basis for both prongs of the State's argument is the fact that a master cannot render a final decision in juvenile adjudicatory hearing. Maryland Code (1974, 1980 Repl. Vol.) § 3-813 (d) of the Courts and Judicial Proceedings Article; Maryland Rule 911. The State principally relies on this Court's decision in *Matter of Anderson,* 272 Md. 85, 321 A.2d 516 (1974), *appeal dismissed,* 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975). But the decision in *Anderson* did not involve the particular issue now before us. Moreover, cases after *Anderson* demonstrate that the State's argument in the instant case must be rejected.

In *Matter of Anderson,* several juveniles were charged with delinquency, and, after adjudicatory hearings before a master, the master in each case submitted a recommendation to the judge that the petition be dismissed. The State filed an exception in each case pursuant to what was then Rule 908, which authorized such an exception and provided that it should be heard by the judge *de novo.* The juveniles challenged the exceptions on Fifth Amendment double jeopardy grounds; the trial judge sustained their challenges; appeals were taken by the State, and, after judgments by the Court of Special Appeals reversing the trial judge, this Court granted the juveniles' petition for a writ of certiorari. We affirmed the judgments of the Court of Special Appeals, holding that the authorization then in Rule 908 for the State to file an exception from the master's recommendation did

not violate the Fifth Amendment's Double Jeopardy Clause.

We initially pointed out in *Anderson* that this Court had previously held that the prohibition against double jeopardy did not apply to juvenile delinquency proceedings. 272 Md. at 92-93. Nevertheless, we assumed arguendo "that a *finding* that an individual is a delinquent under the terms of the juvenile act . . . places him in jeopardy so that a second proceeding relative to the same incident would be barred." *Id.* at 93, emphasis supplied. After reviewing the history of juvenile proceedings in Maryland, the function of a master in Chancery, and the limited authority of a master (*id.* at 93-106), the Court stated in *Anderson* that, because a master cannot make a final determination of delinquency and because his findings do not become binding until approved by a judge, "we conclude that a hearing before a master is not such a hearing as places a juvenile in jeopardy." *Id.* at 106.

*Matter of Anderson,* therefore, involved the right of the State to take an exception from a juvenile master's recommendation. It did not involve or even mention the rule which precludes a retrial after an unnecessary and unconsented mistrial. Moreover, the *Anderson* opinion began with the assumption that a *finding* of delinquency or nondelinquency would preclude further action under the Fifth Amendment, and this Court held that a master had no authority under Maryland law to make such a finding. The statement in *Anderson* that a juvenile delinquency adjudicatory hearing before a master "is not such a hearing as places a juvenile in jeopardy" was made in the context of determining when there was a final adjudication of delinquency. The Court was not addressing the question of when jeopardy initially attaches at a juvenile adjudicatory hearing. This issue was resolved by the Supreme Court a year after *Anderson* in *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

In *Breed v. Jones,* a petition was filed in a California juvenile court alleging that Jones had committed an act which, if committed by an adult, would have constituted the crime of robbery. Subsequently, an adjudicatory hearing was

held before a master or referee.[6] Following the testimony of two prosecution witnesses and the juvenile, the master found that the allegations of the petition were true, and he sustained the petition. Later, pursuant to a California practice whereby waiver or transfer hearings were held *after* adjudicatory hearings, the juvenile court held a waiver hearing, declared Jones unfit for treatment as a juvenile and ordered that he be prosecuted as an adult. Jones was ultimately convicted of robbery in the criminal court. Thereafter he filed a habeas corpus petition in the United States District Court, alleging that his conviction violated the Fifth Amendment's Double Jeopardy Clause. In denying the` petition, the District Court's reasons paralleled both prongs of the State's argument in the instant case. First, the District Court held that jeopardy had not attached at the adjudicatory hearing before the master. 421 U.S. at 526. Alternatively, the District Court held that " 'even assuming jeopardy attached during the preliminary juvenile proceedings ... it is clear that no new jeopardy arose by the juvenile proceeding sending the case to the criminal court.' " *Ibid.* The United States Court of Appeals for the Ninth Circuit reversed, and the Supreme Court, in upholding that reversal, rejected both prongs of the District Court's reasoning.

The Supreme Court in *Breed* initially observed that, with the exception of the right to a jury trial, the Court's decisions have "been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions." 421 U.S. at 528-529. Then, turning specifically to the double jeopardy prohibition and the attachment of jeopardy, the Court stated (*id.* at 529):

> "We believe it is simply too late in the day to conclude, as did the District Court in this case, that

---

6. In Swisher v. Brady, 438 U.S. 204, 215 n. 12, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), the Supreme Court stated: "The California juvenile proceeding reviewed in *Breed* involved the use of a referee, or master, and was not materially different — for purposes of analysis of attachment of jeopardy — from a [Maryland] Rule 911 proceeding." Rule 911 provides for hearings, other than a waiver hearing, to be conducted by masters.

a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew 'the "civil" label-of-convenience which has been attached to juvenile proceedings,' In Re Gault, *supra,* 387 U.S. at 50, 87 S.Ct. at 1455, and that 'the juvenile process . . . be candidly appraised.' 387 U.S. at 21, 87 S.Ct. at 1440. See In re Winship, *supra,* 397 U.S. at 365-366, 90 S.Ct. at 1073."

Pointing out that "in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution," and that a juvenile adjudicatory hearing "engenders elements of 'anxiety and insecurity' in a juvenile, and imposes a 'heavy personal strain' " (*id.* at 530-531), the Court continued (*id.* at 531):

"We deal here, not with 'the formalities of the criminal adjudicative process,' McKeiver v. Pennsylvania, 403 U.S., at 551, 91 S.Ct. at 1989 (opinion of Blackmun, J.), but with an analysis of an aspect of the juvenile-court system in terms of the kind of risk to which jeopardy refers. Under our decisions we can find no persuasive distinction in that regard between the proceeding conducted in this case . . . and a criminal prosecution, each of which is designed 'to vindicate [the] very vital interest in enforcement of criminal laws.' United States v. Jorn, *supra,* 400 U.S. at 479, 91 S.Ct. at 554. We therefore conclude that respondent was put in jeopardy at the adjudicatory hearing. Jeopardy attached when respondent was 'put to trial before

the trier of facts,' 400 U.S., at 479, 91 S.Ct., at 554, that is, when the Juvenile Court, as the trier of the facts, began to hear evidence. See Serfass v. United States, 420 U.S., at 388, 95 S.Ct., at 1062."

With regard to a contention by the State that the policy underlying the double jeopardy prohibition was not infringed because the juvenile never faced the risk of more than one punishment, the Supreme Court answered in language quite applicable to the case at bar (*id.* at 532-533):

"we have pointed out that 'the Double Jeopardy Clause' . . . is written in terms of potential or risk of *trial* and conviction, not punishment," Price v. Georgia, 398 U.S. at 329, 90 S.Ct. at 1761. (Emphasis added.) And we have recently noted:

'The policy of avoiding multiple trials has been regarded as so important that exceptions to the principle have been only grudgingly allowed. . . Following the same policy, the Court has granted the Government the right to retry a defendant after a mistrial only where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Perez, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).' United States v. Wilson, 420 U.S. 332, 343, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975). (Footnote omitted.)

"Respondent was subjected to the burden of two trials for the same offense; he was twice put to the task of marshalling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents. United States v. Jorn, 400 U.S., at 479, 91 S.Ct., at 554."

The Court's reliance upon the mistrial cases is, of course, particularly noteworthy.

Finally, the Court in *Breed* rejected the reasoning of the District Court that any jeopardy which "attaches at an adjudicatory hearing continues until there has been a final disposition of the case. . . ." 421 U.S. at 533-534. The Court

pointed out that the concept of "continuing jeopardy" until the ultimate conclusion of a case was originally articulated by Justice Holmes, dissenting in *Kepner v. United States,* 195 U.S. 100, 134-137, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904), and that the concept has *never* been accepted by a majority of the Supreme Court. *Id.* at 534. The Court concluded *(ibid.):*

> "[T]he fact that the proceedings against respondent had not 'run their full course,' Price v. Georgia, *supra,* 398 U.S. at 326, 90 S.Ct. at 1759, within the contemplation of the California Welfare and Institutions Code, at the time of transfer, does not satisfactorily explain why respondent should be deprived of the constitutional protection against a second trial."

*Breed v. Jones* would certainly seem to require a rejection of both prongs of the State's argument in the instant case, *i.e.,* that jeopardy does not attach at an adjudicatory hearing before a master and that successive adjudicatory hearings should be viewed as one "continuous" proceeding for double jeopardy purposes.[7]

The Supreme Court's subsequent opinion in *Swisher v. Brady, supra,* also undermines the State's argument. Before discussing the *Swisher* opinion, the background of that case should be recounted. As previously mentioned, at the time *Matter of Anderson, supra,* was decided by this Court in 1974, our juvenile rules provided that the State was authorized to file exceptions to the master's findings and recommendations, and that, if exceptions were filed, the matter set

---

7. In Parojinog v. State, 282 Md. 256, 265, 384 A.2d 86 (1978), we recognized that, in light of *Breed v. Jones,* jeopardy attached to a juvenile adjudicatory hearing under Code (1974, 1980 Repl. Vol.), § 3-819 of the Courts and Judicial Proceedings Article, and that a subsequent criminal trial was precluded. Although *Parojinog* in fact involved an adjudicatory hearing conducted by a judge rather than a master, we did not distinguish between the two. *See also* Jesse W. v. Superior Court of San Mateo Cty., 26 Cal.3d 41, 44, 160 Cal.Rptr. 700, 701, 603 P.2d 1296 (1979), holding that jeopardy attaches at the beginning of the adjudicatory hearing in a juvenile proceeding "whether before a juvenile court judge or referee ..., notwithstanding that a referee's findings and orders may be advisory only."

forth in the exceptions would be heard by the judge *de novo.* During the spring of 1975, this Court's Standing Committee on Rules of Practice and Procedure was preparing a proposed revision of the juvenile rules, in light of the Legislature's revision of the juvenile statutory provisions at its 1975 session. On June 3, 1975, the Standing Committee on Rules forwarded its recommendations to this Court. One of the recommendations was the proposed rule that the State's exceptions to the master's findings and recommendations would be heard *de novo* if the State so elected. 2 Md. Reg. 909 (1975).[8] However, just a few days earlier, on May 27, 1975, the Supreme Court had handed down its opinion in *Breed v. Jones, supra.* And shortly thereafter, on June 11, 1975, the United States District Court for the District of Maryland, relying on *Breed v. Jones,* held that a *de novo* hearing, upon the State's exceptions to the master's findings and recommendations, constituted a subsequent adjudicatory hearing which was forbidden by the Double Jeopardy Clause of the Fifth Amendment. *Aldridge v. Dean,* 395 F.Supp. 1161 (D. Md. 1975). Between June 11, 1975, and June 18, 1975, the Standing Committee on Rules modified its recommendation, and proposed that the excepting party *other than the State* could elect a *de novo* hearing, and that "[i]f the State is the excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection." Proposed Rule 910 e, 2 Md. Reg. 970 (1975). The committee members' notes indicate that the proposed change was due to *Breed v. Jones* and *Aldridge v. Dean.* This Court concurred with the recommended change, and the rule as promulgated on June 18, 1975, did not allow the State as excepting party to present additional evidence if the juvenile objected. 2 Md. Reg. 967, 970 (1975). That provision, currently numbered Rule 911 c, remains the same today.

Two years later, in *Brady v. Swisher,* 436 F.Supp. 1361 (D.

---

8. The statutory revision at the 1975 legislative session, Ch. 554, § 3, also provided that the exceptions would be heard *de novo* if the excepting party so elected. *See* § 3-813 (e) of the Courts and Judicial Proceedings Article.

Md. 1977), the United States District Court for the District of Maryland held that permitting the State to take exceptions to a juvenile master's finding of non-delinquency or to his disposition order was a violation of the Fifth Amendment's Double Jeopardy Clause, despite the fact that the exceptions were heard on the record and not *de novo.* The District Court thus held unconstitutional the rule which had been promulgated by this Court. Upon the State's appeal, the Supreme Court reversed. *Swisher v. Brady, supra,* 438 U.S. at 219. But the Supreme Court's reasoning in upholding the Maryland rule authorizing exceptions by the State to the master's proposed findings and recommendations, compels the rejection of the State's position in the present case.

The Supreme Court began its legal discussion in *Swisher* by quoting from *Arizona v. Washington, supra,* a mistrial case, for the "general principles governing this case." 438 U.S. at 214.[9] Then, agreeing with the position of this Court in promulgating Rule 911, the Supreme Court held that permitting the State to file exceptions from the master's proposals does not require an accused to stand trial a second time in violation of double jeopardy principles because the

---

**9.** The passage from *Swisher* is as follows (438 U.S. at 214-215):

"The general principles governing this case are well established.

'A State may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though "the acquittal was based upon an egregiously erroneous foundation." ... If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.

'Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." ... Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona v. Washington,* 434 U.S. 497, 503-505, 98 S.Ct. 824, 829, 55 L.Ed.2d 717 (1978) (footnotes omitted).

"In the application of these general principles, the narrow question here is whether the State in filing exceptions to a master's proposals, pursuant to Rule 911, thereby 'require[s] an accused to stand trial' a second time."

juvenile is subjected to a single proceeding beginning with the master's hearing and culminating with the judge's adjudication and *because the prosecution is not entitled to present additional evidence before the judge.* The Supreme Court stated (*id.* at 215-216, emphasis supplied):

"Importantly, a Rule 911 proceeding does not impinge on the purposes of the Double Jeopardy Clause. A central purpose 'of the prohibition against successive trials' is to bar 'the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding.'" *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). *A Rule 911 proceeding does not provide the prosecution that forbidden 'second crack.'* The State presents its evidence once before the master. The record is then closed, and additional evidence can be received by the Juvenile Court judge only with the consent of the minor."

Later, the Court again emphasized that under Rule 911, the juvenile is not subjected "to the embarrassment, expense and ordeal" of a "full-blown" second hearing because the judge conducts the hearing on the record. *Id.* at 216-217. Finally, the Supreme Court specifically drew a distinction between the limited authorization for the State to take exceptions and, *inter alia,* a mistrial ruling which would lead to a second factual hearing (*id.* at 218, emphasis supplied):

"In *Scott [United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)] we held that it is not all proceedings requiring the making of supplemental findings that are barred by the Double Jeopardy Clause, but only those that follow a previous trial ending in an acquittal; in a conviction either not reversed on appeal or reversed because of insufficient evidence, see *Burks v. United States, supra,* or in a *mistrial ruling not prompted by 'manifest necessity,'* see *Arizona v. Washington,* 434 U.S. 497,

98 S.Ct. 824, 54 L.Ed.2d 717 (1978). A Juvenile Court judge's decision terminating a Rule 911 proceeding follows none of those occurrences."

In the case at bar, the juvenile was subject to two "full-blown" factual hearings without his consent. The State was provided with "that forbidden 'second crack.' " [10] If there was no "manifest necessity" for the unconsented mistrial, the subsequent *de novo* adjudicatory hearing clearly cannot be squared with the principles set forth in *Swisher v. Brady.*

Moreover, to accept the State's position, that the double jeopardy prohibition has no application to juvenile adjudicatory hearings conducted by masters and ending in unnecessary and unconsented mistrials, could give the State even more than a forbidden "second crack." Under the State's theory, there could be innumerable adjudicatory hearings before masters as long as masters were willing to abort hearings because of deficiencies in the State's case. This opportunity for harrassment and abuse would frustrate one of the chief purposes of the double jeopardy prohibition. We agree with the courts in other jurisdictions which have consistently held that the declaration of a mistrial in a juvenile adjudicatory hearing, without manifest necessity and without the juvenile's consent, precludes a subsequent adjudicatory hearing. *In re Raymond P.,* 86 Cal.App.3d 797, 150 Cal.Rptr. 537 (1978) (dismissal by juvenile master during an adjudicatory hearing was treated as a mistrial declaration, and the court held that under *Swisher v. Brady, supra,* and *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Double Jeopardy Clause prohibited a further adjudicatory hearing); *District of Columbia v. I. P.,* 335 A.2d 224 (D.C. 1975); *State in Interest of C. V.,* 146 N.J.Super. 573, 370 A.2d 490, *certif. denied,* 74 N.J. 258, 377 A.2d 663 (1977); *People ex rel. Thomas v. Judges of Fam. Ct.,* 85 Misc.2d 569, 379 N.Y.S.2d 656 (1976);

---

**10.** Because there is no transcript of the first adjudicatory hearing before the master, we have no way of knowing whether the State used the opportunity of the subsequent hearing to have the victim testify more extensively. What is important, however, is not whether the State presented additional evidence but whether the State had a second opportunity to present its evidence.

*Fonseca v. Judges of Family Court of Co. of Kings,* 59 Misc.2d 492, 299 N.Y.S.2d 493 (1969); *Tolliver v. Judges of Family Court,* 59 Misc.2d 104, 298 N.Y.S.2d 237 (1969).

## III.

The remaining issue is whether the State has met its "burden of justifying the mistrial," keeping in mind that the "burden is a heavy one" of demonstrating that there was "manifest necessity" for the mistrial. *Arizona v. Washington, supra,* 434 U.S. at 505. Furthermore, reviewing courts should "resolve any doubt" in favor of the defendant, *Downum v. United States,* 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

We pointed out in *Jourdan v. State,* 275 Md. 495, 510, 341 A.2d 388 (1975), and earlier in *Cornish v. State, supra,* 272 Md. at 317-318, that, although the courts have not prescribed strict categories of circumstances which will meet the "manifest necessity" standard, the cases do set forth certain general principles for determining whether that standard is met. Thus in *Cornish* we discussed various situations in which retrials after mistrials have ordinarily been permitted, as well as other situations where retrials have been precluded under the "manifest necessity" test, 272 Md. at 318, 321. Two circumstances, under which retrials after unconsented mistrials have generally been prohibited, are present in the instant case.

First, the cases clearly establish that a deficiency in the prosecution's evidence, whether or not it should have been expected by the prosecutor and whether or not the prosecutor was at fault, ordinarily does not constitute "manifest necessity" justifying an unconsented mistrial. *See, e.g., Downum v. United States, supra,* 372 U.S. at 737-738 (prosecution witness absent); *United States v. Anderson,* 509 F.2d 312 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) (refusal of prosecution witness to testify); *McNeal v. Hollowell,* 481 F.2d 1145 (5th Cir. 1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (unexpected testimony of one prosecution witness and an-

other prosecution witness unexpectedly invoking the privilege against self-incrimination); *Cornero v. United States,* 48 F.2d 69 (9th Cir. 1931) (unexpected absence of two prosecution witnesses); *Mizell v. Attorney General of State of N. Y.,* 442 F.Supp. 868 (E.D.N.Y. 1977), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979) (two prosecution witnesses unavailable); *District of Columbia v. I.P., supra,* 335 A.2d at 226 (because of testimony during cross-examination of prosecution's witness during juvenile adjudicatory hearing, court believed that prosecution was "trying to hide something"); *Fonseca v. Judges of Family Court of Co. of Kings, supra,* 299 N.Y.S.2d at 498 (unexpected deficiency in police officer's testimony during juvenile adjudicatory hearing); *Tolliver v. Judges of Family Court, supra,* 298 N.Y.S.2d at 239 (failure of prosecution witness to respond to subpoena and testify at juvenile adjudicatory hearing); *Commonwealth v. Ferguson,* 446 Pa. 24, 285 A.2d 189 (1971) (illness of prosecution witness); *Ex parte Myers,* 618 S.W.2d 365 (Tex. Cr. 1981), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981) (unforeseen change in expected testimony of victim).

Second, "a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem," *Cornish v. State,* 272 Md. at 320. *See United States v. Jorn, supra,* 400 U.S. at 487; *Jourdan v. State, supra,* 275 Md. at 511-512; *United States v. Tinney,* 473 F.2d 1085, 1089 (3d Cir. 1973), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973); *Matter of Raymond P., supra,* 86 Cal.App.3d at 803; *Ostane v. Hickey,* 385 So.2d 110 (Fla.App. 1980); *People v. Phillips,* 29 Ill.App.3d 529, 331 N.E.2d 163 (1974); *Jones v. Commonwealth,* 400 N.E.2d 242, 248 (Mass. 1980); *Commonwealth v. Ferguson, supra,* 446 Pa. at 29; *Fonseca v. Judges of Family Court of Co. of Kings, supra,* 299 N.Y.S.2d at 996. Thus in *Jourdan v. State, supra,* 275 Md. at 511-512, where the court had declared a mistrial because the prosecuting attorney became ill during the trial, this Court held that there was no manifest necessity for the mistrial declaration because a continuance until another prosecuting

attorney could become prepared was a feasible alternative. Several of the cases involving missing witnesses have pointed out that a continuance might have cured the problem. *See, e.g., Tolliver v. Judges of Family Court, supra,* 298 N.Y.S.2d at 239-240 (absence of witness at juvenile adjudicatory hearing not manifest necessity "for a mistrial and for causing the infant petitioner substantial prejudice by placing him in jeopardy again. At the most, the matter might have been adjourned once more to afford the complainant or the Court an added opportunity to secure the attendance of the claimed witness.")

Turning to the case before us, the mistrial declared by the master at the first adjudicatory hearing was entirely due to a deficiency in the prosecution's evidence, *i.e.,* the alleged inability of the prosecution's chief witness to be understood during cross-examination. Assuming that the master was justified in concluding that the witness was unable to communicate in the English language, the problem was a failure of the prosecution to have another witness present, namely an interpreter.[11] As shown by the above-cited cases involving mistrials because of the absence of a prosecution witness, such absence has virtually never been considered a manifest necessity for a mistrial. Moreover, a short continuance for the purpose of obtaining an interpreter, with a resumption of the adjudicatory hearing before the same master at the point during cross-examination when the master began to have difficulty, could have solved the problem. Therefore, for two separate reasons, there was no manifest necessity for a mistrial.[12]

This conclusion is confirmed by a leading double jeopardy opinion involving a mistrial because of a prosecution witness's difficulties with the English language, *United States v. Kin Ping Cheung,* 485 F.2d 689 (5th Cir. 1973). In that

---

**11.** Of course, if the master's conclusion was not warranted, there was absolutely no ground for a mistrial, and thus no need to inquire whether there existed a ground supported by the requisite necessity.

**12.** It has been suggested that, under the cases, "faulty arrangements by the government for presenting its testimony will not justify mistrial even in the absence of viable alternatives." Schulhoffer, *Jeopardy And Mistrials,* 125 U. Pa. L. Rev. 449, 479 (1977).

case, Ting testified for the prosecution with the aid of an interpreter. During the cross-examination of Ting, difficulties began to occur. The court's opinion describes what happened as follows (485 F.2d at 690):

> "Ting asserted that he was having trouble with his memory; and acute problems arose concerning the translation of his testimony. Specifically, there was a serious question whether the word he used to describe what he thought he was importing into the United States should be translated as 'food' or as 'Chinese medicine'. The trial judge had two discussions with counsel and the interpreters over the accuracy of the translation. After the completion of Ting's testimony, an Assistant United States Attorney, as an officer of the Court, felt compelled to call to the attention of the trial judge a statement by a potential Government witness to the effect that there was a 'little bit lacking' in the interpretation of Ting's testimony. This person, when questioned by the trial judge, pointed out that there were a number of Chinese dialects (he understood three), and the court interpreter seemed to comprehend Mandarin but did not fully understand Shanghaiese or Cantonese. In addition, there are certain concepts which cannot be translated in another language; that in some cases the best fidelity rate was about 70 to 75 percent. At this point, the trial judge, on his own motion, declared a mistrial in the case . . . . He stated that he expected an interpreter to be found who could speak the dialect of any witness."

After reviewing the mistrial cases from *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824), until the present, the court in an opinion by Judge Wisdom held that the trial judge erred on two grounds in finding manifest necessity for a mistrial. "First, the trial judge failed to consider alternatives to declaring a mistrial." *Kin Ping Cheung, supra,* 485

F.2d at 691. One of those alternatives was the possibility of a continuance. The court went on (*id.* at 691-692):

"Second, this case is one where the mistrial 'entailed not only a delay for the defendant, but also operated as a postjeopardy continuance to allow the prosecution an opportunity to strengthen its case.' *Somerville,* 410 U.S. at 469, 93 S.Ct. at 1073, 35 L.Ed.2d at 434; citing Downum v. United States, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; see McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145, at 1150."

As in *Kim Ping Cheung,* the prosecution witness's difficulties with the English language during cross-examination at the first adjudicatory hearing in the present case did not rise to that "high degree" of necessity required to justify a subsequent adjudicatory hearing. Consequently, the petitioner's motion to dismiss on double jeopardy grounds should have been granted.

> *Judgment of the Court of Special Appeals reversed, and case remanded to that Court with directions to reverse the judgment of the Circuit Court of Baltimore City.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*