28

The People of the State of New York, Respondent, *v.* Fred Rial, Jr., Appellant.

Fourth Department, January 20, 1966.

*Joseph J. Nasser* and *William J. Holbrook* for appellant.

*Lurton G. Whiteman, District Attorney* (*Brian C. Flynn* and *Donald G. Purple, Jr.,* of counsel), for respondent.

Del Vecchio, J. Defendant appeals from a conviction of murder in the second degree on two counts.

The indictment charged murder in the first degree in two counts alleged to have been committed on January 30; 1964. There were no eyewitnesses to the crimes. The bodies of the

victims were discovered on February 20 and 21, 1964. The defendant had been confined in a hospital from February 5 to May 7 as a result of a tractor accident in which he sustained, among other injuries, a broken left leg, fracture of the pelvis, and a crushed chest with collapsed lung. Suspecting defendant of the killings, on February 21 police officers attempted to interview him with a tape recorder, but were advised by the hospital administrator that permission could not be granted without a court order on the ground that it would be a violation of defendant's right of privacy. Thereafter an eavesdropping order was obtained ostensibly pursuant to section 813-a of the Code of Criminal Procedure. This section had no pertinency upon the facts presented here, and the method employed by the authorities obviously was a subterfuge to placate the administrator. However, a tape recorder was "planted" and the conversations between defendant and investigating officers recorded on February 22, 25, and March 24, without the knowledge or permission of defendant.

During these conversations, although defendant was repeatedly accused of the crimes and made incriminatory statements, he never made a confession and at all times denied any participation in the killings. While the recordings were not received in evidence upon the trial, they were used to refresh the recollection of prosecution witnesses.

The law is well established that inculpatory and inconsistent exculpatory statements will be suppressed if police officers acquire them by unlawfully invading or trespassing upon a person's constitutionally protected area, such as his home (*Silverman* v. *United States,* 365 U. S. 505), a room in a hotel or in a boardinghouse (*Stoner* v. *California,* 376 U. S. 483, 490) or a store (*Wong Sun* v. *United States,* 371 U. S. 471; *Lanza* v. *New York,* 370 U. S. 139, 143; 11 N. Y. Law Forum, p. 328 *et seq.*).

" A hospital has been compared to a kind of specialized hotel where the sick or infirm in body or mind may be treated by physicians expressly or impliedly employed by them." (27 N. Y. Jur., Hospitals and Asylums, p. 193.) One confined in a hospital may establish a residence in the county where the institution is located. (*Bradley* v. *Plaisted,* 277 App. Div. 620.) We conclude that the acts of the police officers were an unlawful invasion of an area which was constitutionally protected and the ensuing admissions and inconsistent exculpatory statements obtained should be suppressed as " no less the ' fruit ' of official illegality than the more common tangible fruits of the unwarranted intrusion." (*Wong Sun* v. *United States, supra,* p. 485; see, also, *People* v. *Rodriguez,* 11 N Y 2d 279, 287.)

Therefore, under the facts in this case, it was error to receive in evidence the interrogation acquired while defendant was confined in the hospital. This was grossly prejudicial to defendant and in and of itself calls for a reversal.

There are other errors in the case but we will discuss only three of them.

(1) Receipt of improper evidence. Photographs showing the bodies of the decedents in the barn depicting grisly scenes had no probative value and were highly inflammatory. Some were merely marked, then exhibited to the jury; others were marked and received in evidence. Neither course was proper. It was also improper to mark bloodstained garments for identification, parade them before the jury and never offer them in evidence. The failure to offer was practically an admission by the District Attorney that they were not admissible. We can conceive of no other purpose than to excite the sympathy and passion of the jury.

(2) Violation of the privilege against self incrimination. The defendant did not take the witness stand in his own behalf. In the course of his summation the prosecutor told the jury that " that morning (defendant) called Mattison to come for the cattle, not to (decedent's) but to come first to (defendant's). Did you hear any evidence? Did you hear any evidence that (defendant) called (decedent) to tell him that Mattison was coming? " The prosecutor went on to argue that defendant did not call the deceased husband because he (defendant) had shot the husband and wife and knew the telephone would not be answered. It is obvious that defendant was the logical person who could have testified that he called the decedent. Therefore these remarks were improper. (*People* v. *Watson*, 216 N. Y. 565; *People* v. *Hetenyi,* 304 N. Y. 80.) Furthermore, in view of this argument it was a serious and prejudicial error for the court, after saying to the jury: " Even if a defendant attempts an explanation and fails to support it, or more strongly still even if you don't believe his explanation ", to charge that the jury could " draw such inferences as they may think warranted by the evidence from the failure of either party to call any witness who might reasonably be expected to throw light on the situation." These remarks involved defendant's failure to take the stand and violated his privilege against self incrimination.

Later in the charge and while the evidence was being marshalled, the jury was instructed in accordance with the mandate of section 393 of the Code of Criminal Procedure. This in no way remedied the initial error. The two portions of the charge

considered together are somewhat similar to the instructions passed upon in *People* v. *Forte* (277 N. Y. 440). There it was said (p. 442) that "The charge tended to nullify the plain provision of the statute that failure of a defendant to testify in a criminal case cannot be treated as creating a presumption against him." In *People* v. *McLucas* (15 N Y 2d 167, 171) the court said: "True, the Trial Judge later charged the law as in section 393 of the Code of Criminal Procedure but the trouble was that he had already committed reversible error by his earlier remarks in this connection."

(3) Substitution of the alternate juror. The trial extended over a period of 12 days. The jury retired to deliberate at 5:15 P.M. on March 31. After time out for supper they deliberated until 12:34 A.M. April 1 when they were sent out to a hotel for the night, resuming at 10:00 A.M. the next day. At 6:10 P.M. the foreman communicated to the court that they were "Unable to agree on a verdict. We also feel that further deliberations will not change our present status. We await further instructions from the Court." The court sent the jury out to supper and asked them to continue deliberating thereafter. Following supper and at 9:38 P.M. the jury asked that they be allowed to retire for the evening due to the illness of a juror. The next morning the foreman informed the court that the juror was unable to continue to deliberate, and the court stated that after communicating with the juror's personal physician he was satisfied that he was too ill to continue and substituted an alternate juror.

Section 428 of the Code of Criminal Procedure provides that the jury can be discharged when, after the lapse of such time as shall seem reasonable to the court, they shall declare themselves unable to agree upon a verdict. It is clear that the determination when to discharge a jury for failure to agree rests largely in the discretion of the court. However, before deciding to substitute an alternate the court minimally should have had before it some direct proof (by testimony or affidavit) from the doctor that the juror in question was too ill to proceed instead of the statement of the foreman and that of the Trial Judge that he had communicated with the doctor.

We also feel that it was improper to deny defendant the right to see the Grand Jury minutes of Nichols during the Huntley hearing proceedings. (*People* v. *Rosario*, 9 N Y 2d 286; *People* v. *Malinsky*, 15 N Y 2d 86, 90.) However, in view of our conclusion as to the inadmissibility of defendant's statements, the question becomes academic. Lastly, we disapprove of the prac-

tice of Bench conferences between the court and respective counsel inaudible to the jury and, more important, to the defendant (cf. *People* v. *Anderson,* 16 N Y 2d 282).

In our opinion the conviction should be reversed and a new trial granted because of errors which affected the substantial rights of the defendant.

WILLIAMS, P. J., and BASTOW, J., concur; HENRY and MARSH, JJ., dissent and vote to affirm.

Judgment reversed on the law and facts and a new trial granted.