THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND WASHINGTON, Appellant.

First Department, October 29, 1987

APPEARANCES OF COUNSEL

*Rosali Vazquez* of counsel *(Jonathan Carter* with him on the brief; *Philip L. Weinstein,* attorney), for appellant.

*William J. Natbony* of counsel *(Maryjane C. Shimsky* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

KASSAL, J.

The sole issue on the appeal is whether the trial court erred in discharging an absent juror on the second day of the trial.

Defendant appeals from a judgment which convicted him after a jury trial of grand larceny in the third degree and sentenced him as a predicate felon to an indeterminate term of 2 to 4 years' imprisonment. The conviction arose out of an incident which occurred on August 23, 1985, at about 11:00 P.M., when defendant snatched a 14-karat gold chain from complainant's neck, while she was walking with two companions on 59th Street, between Fifth and Madison Avenues. He was chased by complainant, apprehended by two off-duty police officers and the operator of a limousine and was identified at the scene.

At the end of the first day of trial, the court instructed the jurors to return the next day "at nine-thirty promptly". The next day, at about 11:30 A.M., it was announced that juror No. 5 had not returned and could not be located, despite efforts by court personnel. A telephone call to his home resulted in a conversation with his mother, who said that her son was sick with a cold, had gone to the hospital for treatment and could not come to court. She was evasive when questioned as to the name of the hospital, sufficient for the court to conclude that her account "was not very convincing" and that she was covering up for her son who was seeking to avoid further jury service. Defendant's request for a one-day adjournment to locate the missing juror was denied, whereupon the court discharged the juror and replaced him with the next alternate juror.

Defendant contends that there was no basis for the court's determination that the juror was attempting to avoid further service and that the unverified claim by the mother that he was ill was not a proper basis for his discharge, thus depriving defendant of his constitutional right to a trial by jury (NY Const, art I, § 2; *see, People v Anderson,* 70 NY2d 729).

The statutory standard for the discharge of a juror and replacement with an alternate is contained in CPL 270.35, which provides in part as follows: "If at any time after the

trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service * * * the court must discharge such juror. If an alternate juror or jurors are available for service, the court must order that the discharged juror be replaced by the alternate juror whose name was first drawn and called".

The statute, it has been recognized, does not define "illness or other incapacity" and, as a result, the language should be construed in accordance with its common, everyday meaning, thereby permitting the court, in the exercise of its discretion, to make a determination as to incapacity to serve on a case-by-case basis, in accordance with the particular facts. *(McShall v Henderson,* 526 F Supp 158, 162.) In *McShall,* the court denied a petition for habeas corpus premised upon petitioner's claim that he had been denied a fair trial when the court refused to discharge a juror who claimed to be ill after deliberations had begun. After a conversation with the juror, the court concluded that the "illness" was "mere anxiety and nervousness", stemming from his role as jury foreman, which was an insufficient basis for disqualification. Accordingly, the juror was instructed to continue deliberations.

We have recently had occasion to consider the exercise of judicial discretion in making inquiry of a juror as to potential bias, in order to make a determination as to whether a juror is "grossly unqualified to serve in the case", a different standard also set forth in CPL 270.35 *(People v Rodriguez,* 125 AD2d 82). Although the issue in *Rodriguez* was different, we approved the procedure in that case, under which the court conducted an inquiry with a juror, who had demonstrated both intelligence and perception, in order to dispel any possible prejudice which might result from an unrelated incident. While the factual situation and issue are different, the case is instructive in terms of giving due recognition to the broad discretion to be accorded the trial court in ensuring a criminal defendant's right to a fair and impartial jury trial.

On the issue of juror disqualification "by reason of illness or other incapacity," there appears to be some disagreement among the Appellate Division departments which have considered the issue in terms of the extent of discretion to be accorded the trial court. The Fourth Department, in *People v Rial* (25 AD2d 28), followed a strict approach, concluding, under former Code of Criminal Procedure § 428 that, "before

deciding to substitute an alternate the court minimally should have had before it some direct proof (by testimony or affidavit) from the doctor that the juror in question was too ill to proceed instead of the statement of the foreman and that of the Trial Judge that he had communicated with the doctor" (supra, at 31). In Rial, after a 12-day trial, during deliberations, the foreman requested that the jury be permitted to retire for the evening due to the illness of a juror and, the next morning, informed the court that the same juror was unable to continue deliberations. The Trial Justice substituted an alternate after communicating with the juror's personal physician, who satisfied the court that the juror was too ill to continue. The Appellate Division reversed and directed a new trial, citing, inter alia, the absence of medical corroboration as to the extent of the illness.

In People v Karadimas (99 AD2d 652), the Fourth Department reversed a conviction and directed a new trial, holding, inter alia, that it was error to discharge an absent juror after another juror had informed the court that the absent juror's mother was ill. However, in that case, it appears that the court made no further inquiry, denied the defense request for a one-day adjournment and, over objection, discharged the juror, stating: "In view of the lack of information, we will proceed with the first alternate juror" (supra, at 653). Without referring to its prior determination in Rial, the Appellate Division reversed, finding no basis on the record to establish that the absent juror was unable to serve by reason of illness, incapacity or any other reason.

The Second and Third Departments have adopted a more flexible approach in terms of vesting the Trial Justice with broad discretion. Although, where the court excuses a juror and substitutes an alternate, it must state for the record the reasons for such action and the basis for its decision (People v Caputo, 13 AD2d 861), the Third Department, in People v Pierce (97 AD2d 904) expressly rejected the Fourth Department's strict interpretation of CPL 270.35, in favor of the flexible rule adopted by District Judge Brieant in McShall v Henderson (supra). Thus, in Pierce, it was held that no prejudicial error resulted when the court excused a juror after having been informed that she was ill, albeit the substitution of an alternate was directed without requiring any direct proof, either by affidavit or testimony. While the issue had not been preserved for appellate review, nevertheless, the Appellate Division expressed its agreement with the more liberal

approach with regard to the trial court's exercise of judgment in these matters.

Similarly, the Appellate Division, Second Department, in *People v Burns* (118 AD2d 864), adopted the Third Department standard in *Pierce (supra),* vesting the trial court with "broad discretion" under CPL 270.35, in terms of whether a juror should be discharged *(supra,* 118 AD2d, at 865).

We agree with the flexible standard of the Second and Third Departments, which, in our view, more appropriately accords deference to the discretion of Trial Justices who must determine such matters in the first instance. The liberal rule more readily lends itself to the efficient administration of justice and conservation of judicial time and energy. It recognizes that experienced Trial Justices make reasoned determinations on these matters, keeping in mind the defendant's constitutional right to a fair trial and, at the same time, the need for expedition in the resolution of criminal proceedings. Such approach, when appropriate, also avoids the necessity for hearings on collateral matters, unrelated to the guilt or innocence of the defendant or the conduct of a fair and impartial trial.

In *United States v Domenech* (476 F2d 1229, *cert denied* 414 US 840), the United States Court of Appeals for the Second Circuit affirmed a conviction, notwithstanding that the trial court had discharged an absent juror who was 10 minutes late on the morning the court was to charge the jury. Over defendant's objection, an alternate was substituted for the tardy juror who appeared shortly after the court began to instruct the jury. While the Court of Appeals recognized that other Judges might have waited longer, especially considering the state of transportation in this city, it held: "we certainly cannot say that the judge abused his discretion by insisting on going ahead after 10 minutes. Nor is there any basis for finding an undue impact on the jury either in the mere act of excusing the juror or in the way it was done. We would have to strain much too far to discern any bias or prejudice against the defendant in this episode" *(supra,* at 1232). The case had been scheduled to go to the jury for deliberations that day and, therefore, the court may have wished to avoid extending the proceeding into the nighttime hours, a pertinent consideration in view of the fact that a verdict was not returned until 9:00 P.M.

Applying the rationale of the Second and Third Depart-

ments and the reasoning of the Second Circuit Court of Appeals in *Domenech (supra)*, we find no error in the court having excused the absent juror in this case. As stated, court personnel immediately attempted to communicate with him and were told he was ill, had gone to an unnamed hospital and could not serve. While his mother's evasive response supported the conclusion that the juror was avoiding jury service, in our view, the Trial Justice acted conscientiously and with appropriate diligence to protect defendant's rights, as well as assure a just and expeditious conclusion of the criminal trial.

Clearly, here, every reasonable effort was made to locate the missing juror and, in the exercise of discretion, it was determined that no useful purpose would be served by further delay to confirm whether the juror was actually ill, which would occur if we were to follow the Fourth Department's approach requiring corroborating proof. It would unnecessarily delay and disrupt the proceeding to verify what the court had already ascertained by informal means, namely, that the juror would not, in fact, be present, whatever the reason or justification. Here, the court waited two hours beyond the appointed time when the jurors had been instructed to report "promptly" and reasonable efforts were made to ascertain the missing juror's whereabouts. We reject defendant's contention that more was required, namely, either adjourning the trial or conducting a minihearing on the issue. This would result in the judicial process coming to a grinding halt whenever there is a malingering juror, unwilling to fulfill his civic responsibility, or a juror absent without explanation—either instance would disrupt the orderly administration of justice. That approach is unreasonable, unjustifiably interferes with the exercise of judicial discretion in the management of a criminal trial and would be an unwarranted perversion of the principles of justice underlying our criminal justice system.

*People v Foy* (32 NY2d 473), relied upon by defendant, is inapplicable, since that case dealt with error in refusing an adjournment which had been requested to afford the defense additional time to produce an alibi witness. Also inapplicable is *People v West* (62 NY2d 708) wherein error was ascribed to the discharge of two jurors who had expressed reservations about the conduct of the trial and certain mannerisms of the prosecutor.

Similarly inapposite is *People v Anderson* (70 NY2d 729, *supra)*, where the Court of Appeals directed a new trial, *inter*

*alia,* for the failure of the trial court to conduct a sufficient, probing inquiry as to racial feelings expressed by one of the jurors, which could impact upon his ability to be a fair and impartial juror. In reversing, the Court of Appeals found that the inquiry by the trial court and the responses by the juror were insufficient to determine that he was "grossly unqualified" under CPL 270.35 *(compare, People v Rodriguez,* 125 AD2d 82, *supra).*

Although the court in *Anderson (supra)* did recognize that harmless error analysis would not apply with respect to the discharge of a juror and replacement with an alternate, in view of our determination here that no error was committed, there was no deprivation of defendant's constitutional right to a jury trial in this case.

Accordingly, the judgment, Supreme Court, New York County (Leslie C. Snyder, J.), rendered January 30, 1986, convicting defendant, after a jury trial, of grand larceny in the third degree, and sentencing him as a predicate felon to 2 to 4 years' imprisonment, should be affirmed.

KUPFERMAN, J. P., CARRO and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, rendered on January 30, 1986, unanimously affirmed.