■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO ROSA, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered March 1, 1985, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered, that the judgment is reversed, on the law, and a new trial is ordered; no questions of fact have been raised or considered.

The record reveals that on Friday, February 8, 1985, shortly before the close of testimony, the jury forewoman—a Seventh Day Adventist—informed the court that by virtue of her religious beliefs she would be unable to remain at the courthouse after dark, although she would be able to resume deliberations the following Monday. The court expressed its intention to complete testimony, finish summations, and charge the jury that afternoon. After discussing the matter with counsel, the court stated that it preferred to discharge the forewoman if summations and the jury charge could be completed on Friday. In support of its decision, the court expressed the concern that if deliberations were delayed over

the weekend, the jurors' recollections could be dimmed. The court further stated that, "given the fact I have another case that is slated to start on Monday, I am going to excuse this juror and replace her with an alternate".

In response, the defense counsel argued, *inter alia,* that "this has been such a short trial that there aren't so many facts that the jury is going to forget just because we have a hiatus of a weekend". The court subsequently noted that in order to accommodate the juror, it would be necessary to recess Friday afternoon and that to do so would result in "closing our courtroom for a whole afternoon for no reason, and I do not think that, in view of the fact that this Forewoman did not tell us ahead of time of the problem, that we should disrupt the trial in this way and have a long recess between the summations and the charge". Notably, there is nothing in the record which indicates that the jury forewoman was questioned in respect to the existence of potential conflicts resulting from religious beliefs.

Nevertheless, on Friday afternoon, after summations had been completed, and prior to the court's charging of the jury, the forewoman was discharged over the defense counsel's objection and an alternate juror substituted in her place. The jury was charged that day, and, after deliberating for approximately 90 minutes, rendered its verdict of guilty. On appeal, the defendant argues, *inter alia,* that the court erred in discharging the jury forewoman. We agree.

As the Court of Appeals has observed, "[a] defendant has a constitutional right to a trial by a 'particular jury chosen according to law, in whose selection [the defendant] has had a voice' " *(People v Buford,* 69 NY2d 290, 297-298, quoting from *People v Ivery,* 96 AD2d 712; *see,* NY Const, art I, § 2; *People v Anderson,* 70 NY2d 729, 730). Moreover, in order "[t]o protect this constitutional right in criminal cases, the Legislature has enacted several procedural safeguards" *(People v Buford, supra,* at 298) among which is CPL 270.35, pursuant to which the jury forewoman at bar was discharged. The Court of Appeals in *People v Anderson (supra,* at 730-731) further noted that the denial to a defendant of a chosen jury on an improper basis is a deprivation of the constitutional right to a jury trial, to which harmless error analysis is inapplicable.

CPL 270.35 provides, in pertinent part, that the trial court must discharge a juror "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other

incapacity, or for any other reason is unavailable for continued service". The statute, it has been observed, "does not define 'illness or other incapacity' and, as a result, the language should be construed in accordance with its common, everyday meaning, thereby permitting the court, in the exercise of its discretion, to make a determination as to incapacity to serve on a case-by-case basis" *(People v Washington,* 131 AD2d 118, 120, *lv granted* 70 NY2d 938; *People v Pierce,* 97 AD2d 904; *cf., People v Burns,* 118 AD2d 864; *McShall v Henderson,* 526 F Supp 158).

When construed in terms of their common, everyday meaning *(People v Washington, supra,* at 120), and tempered by consideration of the fundamental nature of the right involved, we are of the view that the statutory phrases "incapacity" and "unavailab[ility] for continued service" do not embrace the circumstances with which the court was confronted in this case. At bar, the forewoman was available for continued service immediately after her religious observances were completed, which would have required only a brief, weekend hiatus in submitting the case to the jury.

Moreover, while the objectives of maintaining calendar control and otherwise ensuring the efficient resolution of the court's business are certainly laudable goals, minor scheduling difficulties involving the utilization of courtroom space or the brief delay which may have ensued had the forewoman been accommodated are not meaningful counterweights to the defendant's constitutional right to trial by a jury in whose selection he has participated. Further, this case is distinguishable from those in which the nature and extent of the juror's incapacity or unavailability for continued service is not readily ascertainable at the time the issue of discharge arises *(see, e.g., People v Washington, supra; cf., People v Hewlett,* 133 AD2d 417) or where the period of unavailability is such that a reasonable accommodation cannot be fashioned so as to facilitate retention of the juror without unduly delaying the trial proceedings *(see, e.g., People v Burns, supra).* In light of the foregoing, the brief period of unavailability resulting from the forewoman's religious observance in this particular case cannot be characterized as a disability resulting in "incapacity" or "unavailab[ility] for continued service" within the meaning of CPL 270.35.

Finally, the issues to be resolved in this case—in which only one count of the indictment was submitted to the jury—were neither factually nor legally complex, as the court itself remarked prior to administering its charge. Indeed, the record

reveals that the taking of testimony commenced only one day before the case was ultimately submitted to the jury and that the jury rendered its verdict after deliberating for only 90 minutes. Accordingly, there was no danger that the jurors' recollections would be dimmed by delaying the commencement of their deliberations for the weekend.

We have reviewed the defendant's remaining contentions and find them to be without merit. Rubin, J. P., Kooper, Sullivan and Harwood, JJ., concur.