■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL LILLY, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered February 6, 1986, convicting him of murder in the second degree, robbery in the first degree (two counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant's contention that he was denied his constitutional and statutory right to a jury trial when the court, over counsel's objection, discharged a sworn juror who knew a spectator in the courtroom is without merit. Following summations, but prior to the charge, it was brought to the court's attention that one of the sworn jurors was seen embracing and kissing a spectator in the courtroom. The juror revealed that she and the spectator belonged to the same church and that the spectator's connection with the case involved "her daughter's friend". When asked to recount the precise nature of the encounter, the juror rendered the following account: "I embraced her, because this is our way of doing things, love, and I asked her, 'What are you doing here?', and she said, 'Well, my daughter's friend is here'. Who her daughter's friend is, I don't know". In response to the court's query whether the incident might effect her ability to be fair and impartial, the juror responded with the following: "Maybe so. Not at this point". However, she unequivocally asked to be dismissed stating, "I can't really tell you now. I can't tell you now, but the individual out there, yes, I love the individual because we're built on love. That's why I asked you to dismiss me". The defense counsel declined an opportunity to question the juror further. Under the circumstances, the trial court properly concluded that the juror's "love" for an interested spectator who she saw every night at church coupled with her hesitation in committing herself to an impartial verdict was sufficient to justify her discharge. In view of the juror's unequivocal request to be dismissed upon the court's "probing

and tactful inquiry" *(People v Buford,* 69 NY2d 290, 299), the juror was properly discharged as grossly unqualified *(see,* CPL 270.35).

Patently distinguishable from the instant case are the recent decisions of this court in *People v Gallina* (137 AD2d 617) and *People v Rosa* 138 AD2d 753). In *Gallina,* the subject juror had been improperly removed despite her unequivocal response to the trial court that she could remain impartial. *Rosa* involved the improper dismissal of a juror on the ground of "incapacity" or "unavailab[ility] for continued service" within the meaning of CPL 270.35. The grossly unqualified standard was not therein invoked.

Nor was the instant situation one in which the trial court was compelled to speculate with respect to the possible partiality of a sworn juror based on equivocal responses *(see, People v Anderson,* 70 NY2d 729, 730; *People v Cargill,* 70 NY2d 687, 689).

The defendant's claim of error with respect to the prosecutor's summation, although unpreserved for our review (CPL 470.05 [2]; *People v Medina,* 53 NY2d 951) is without merit. The prosecutor's statement that the surviving victim's testimony at trial was consistent with his statements made to the police and before the Grand Jury was not, as claimed by the defendant, an improper bolstering or a shifting of the burden of proof, but rather a fair response to the defense counsel's repeated statements in summation that the witness was unbelievable. Further, the court, on numerous occasions during the summations, instructed the jury that it was their recollection of the testimony rather than anything the lawyers said which was to govern. As such, it cannot be said that the prosecution's summation was improper *(see, People v Galloway,* 54 NY2d 396; *People v Ashwal,* 39 NY2d 105; *People v Roopchand,* 107 AD2d 35, *affd* 65 NY2d 837).

The defendant's remaining contention, that the court's charge as to accessorial liability was deficient and supported by a misleading analogy, is similarly unpreserved for review (CPL 470.05 [2]; *People v Lipton,* 54 NY2d 340). Upon a review of the charge, however, we note that the simple analogy of an orchestra wherein each member contributes to the harmony was a nonprejudicial and elucidating example which assisted the jury in its understanding of the legal concept involved. Further, the court read the statutory definition of accessorial liability to the jury and explained that a participant must act knowingly and with the intent to commit the crime. Thus, the

jury was properly instructed as to the elements of accessorial liability *(see, People v Newton,* 120 AD2d 751, *lv denied* 68 NY2d 759). Thompson, J. P., Lawrence and Weinstein, JJ., concur.

Brown, J., dissents and votes to reverse the judgment appealed from and order a new trial, with the following memorandum: It is well established that "[b]efore a sworn juror may be discharged as 'grossly unqualified' (CPL 270.35), a trial court must—based on tactful and probing inquiry—be convinced that the juror's knowledge will prevent that person from rendering an impartial verdict. The court may not speculate as to the possible partiality of a sworn juror based upon equivocal responses" *(People v Anderson,* 70 NY2d 729, 730; *see also, People v Cargill,* 70 NY2d 687; *People v Buford,* 69 NY2d 290). In my view, the record here does not reveal either a sufficiently probing inquiry by the court or an unequivocal response by the disqualified juror.

While the court did conduct an inquiry of the juror who had been seen embracing a spectator in the courtroom, it never ascertained what the connection was between the daughter of the spectator and the case on trial. It was never established whether the daughter's friend was a defendant, a complainant or a witness in the case and the juror specifically stated that she did not know who that person was. Thus, there is no basis for an inference that the juror's ability to deliberate impartially had been affected by a particular bias simply based upon her conversation with a spectator *(see, People v Gallina,* 137 AD2d 617). Moreover, the juror's own response to the court's inquiry as to whether her ability to be fair and impartial had been affected—"[m]aybe so. Not at this point"—can hardly be described as unequivocal. Under such circumstances, the discharge of the juror over the defendant's objection without further inquiry was not justified and deprived the defendant of his constitutional right to a jury trial before a particular jury selected in accordance with the law, and he is entitled to a new trial *(see, People v Cargill, supra; People v Anderson, supra; People v Buford, supra; People v Gallina, supra).*