regard before the trial court" *(People v Williams,* 141 AD2d 783, 785; CPL 470.05 [2]). Bracken, J. P., Lawrence, Weinstein and Balletta, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN LAWRENCE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Schwartzwald, J.), rendered March 11, 1983, convicting him of robbery in the first degree (four counts) and robbery in the second degree (four counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

On December 30, 1981, at approximately 9:30 P.M., the defendant and two codefendants entered "Club 301", a neighborhood bar. The defendant struck one of the patrons with a shotgun and then fired a shot towards the ceiling. After announcing a stickup, the defendant and the two codefendants relieved the 35 or 40 patrons of their money and jewelry. Once the robbery was completed, one of the codefendants attempted to exit the club through the front door, but was rebuffed by police gunfire. The defendant then broke down the rear door of the club and was apprehended by waiting police officers. After the defendant dropped the two handguns which he was carrying, the arresting officer handcuffed him and observed money and jewelry protruding from his back pocket.

In the ensuing confusion, the police could not ascertain who were the victims and who were the perpetrators of the crime; hence, a city bus was commandeered and each person leaving the bar was handcuffed and brought to the precinct. The defendant, already in custody, had been brought to the precinct in a police car. Jewelry and currency in the amount of $263 were recovered from the defendant's person at the precinct and, as the patrons entered the precinct, they saw the defendant in the holding cells.

Addressing the defendant's initial contention, we find that the hearing court properly denied suppression of the identification testimony. Although the patrons of the bar observed the defendant in the holding cells at the precinct, the record reveals that these viewings were not the result of any improper police activity, but rather were accidental and unavoidable encounters as the many patrons entered the precinct. These accidental and unarranged viewings were not attributable to any misconduct of the police or the prosecutor and, in

our view, they were neither impermissibly suggestive nor subject to suppression (see, People v Hampton, 129 AD2d 736; People v Musial, 120 AD2d 682, lv denied 68 NY2d 815; People v Lopez, 118 AD2d 873, lv denied 68 NY2d 670).

The prosecutor's exhibition of photographs of the defendant and the two codefendants to six of the numerous club patrons for the purpose of ascertaining what roles each of the perpetrators played was not improper, as the identifications were merely confirmatory in nature and were not the product of suggestive police action. Rather, they resulted from the witnesses' own observations and information regarding the incident (see, People v Estela, 136 AD2d 728, lv denied 71 NY2d 895; People v Laguer, 58 AD2d 610). In any event, the hearing record amply sustains the court's finding of an independent basis for the in-court identifications (see, People v Gildersleeve, 143 AD2d 361; People v Davis, 134 AD2d 510).

We further find that the court's charge on identification was proper, as it concisely conveyed to the jury the People's burden of proving beyond a reasonable doubt that it was the defendant who had committed the crimes charged (see, People v Whalen, 59 NY2d 273, 279). The charge also accurately set forth complete instructions concerning the proper evaluation of identification testimony.

The defendant next contends that two of the prosecution's witnesses should not have been credited by the jury because they confused the defendant with one of his codefendants in recounting the role which each played during the robbery. Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]). Resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses (see, People v Gaimari, 176 NY 84, 94). Its determination should be accorded great weight on appeal and will not be disturbed unless clearly unsupported by the record (see, People v Garafolo, 44 AD2d 86, 88).

With respect to the defendant's claim of error in the discharge of a sick juror 15 days after the trial commenced, we note that such discharge was a proper exercise of the trial court's discretion. The record reveals that, nearing the close of the trial a juror called from home to inform the court that "[s]he tried to go as long as she could, but she is running a

temperature now. She had to stay home * * * she would be unable to attend court". We note that while it would have been preferable for the court to conduct a more detailed inquiry of the circumstances of this juror's inability to serve due to illness pursuant to CPL 270.35, the requirements recently set forth in *People v Page* (72 NY2d 69) have been satisfied. The trial court ascertained that the juror was at home, that she had become increasingly ill, and that she was no longer able to continue service as she was now suffering from a fever. In our view, a further extension of this already unduly protracted trial by the granting of an indeterminate adjournment due to the juror's illness would not have served the interest of the defendant, the People, or the court. Hence, the discharge of the juror constituted a proper exercise of the trial court's discretion *(see, People v Burns,* 118 AD2d 864).

We do not find the defendant's sentence excessive in light of the violent nature of the crimes committed *(see, People v Suitte,* 90 AD2d 80). Mangano, J. P., Thompson, Brown and Sullivan, JJ., concur.