■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD JOHN, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Radin, J.), rendered February 6, 1985, convicting him of robbery in the second degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

We agree with the defendant's contention that the court failed to make an appropriate inquiry before discharging a juror.

Pursuant to CPL 270.35, the trial court must discharge a juror "[I]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity or for any other reason is unavailable for continued service". The determination of whether to discharge a juror is left to the trial court's discretion to be made on a case-by-case basis *(see, People v Rosa,* 138 AD2d 753).

In *People v Page* (72 NY2d 69), the Court of Appeals acknowledged that no inflexible rule could be promulgated, but that there were certain factors that should be considered, including "the stage of the trial, the expected length of the absence of the juror if known, whether the juror's return is ascertainable and reasonably imminent and certain, whether reasonable attempts have been made to locate the absent juror, and other relevant circumstances such as the continued availability of key witnesses" *(People v Page, supra,* at 73). The *Page* court continued: "A trial court's decision dismissing a juror must safeguard the important right of a defendant to be tried by jurors in whose selection the defendant has had a voice. It thus necessitates a reasonably thorough inquiry and recitation on the record of the facts and reasons for invoking the statutory authorization of discharging and replacing a juror based on continued unavailability. This requires a reasonable attempt to ascertain where the absent juror is, why the juror is absent, and when the juror will be present" *(People v Page, supra,* at 73).

In this case, on the second day of a three-day trial, the clerk reported to the court: "Your Honor, one of our jurors is ill, Juror Number 1 * * * she called Central Jury today and said she was ill". No further inquiries were made concerning the juror's illness, nor was there any attempt to learn when the

juror would be able to return. Thus, it is clear that the trial court did not meet the standards promulgated by the Court of Appeals in *People v Page (supra),* necessitating a reversal of the judgment of conviction and a new trial.

The cases relied upon by the People are distinguishable from the case at bar. In *People v Washington* (131 AD2d 118, *affd* 72 NY2d 69), a juror was replaced after the court made particularized inquiries concerning the juror's claim to illness on the record. The inquiries were repeated, and numerous but unsuccessful attempts to locate the juror were made. When the juror's mother was finally reached, she said her son had gone to the hospital with a cold but refused to say to which hospital he had gone. The court, at trial, thereupon stated on the record, " 'we have no way of finding out where he [the juror] is' " *(People v Page, supra,* at 72).

*People v Lawrence* (143 AD2d 1045), is also distinguishable. There a sick juror was discharged 15 days after the trial had commenced in that case. The juror called from home to tell the court that " '[s]he tried to go on as long as she could, but she is running a temperature now. She had to stay home * * * she would be unable to attend court' " *(People v Lawrence, supra,* at 1046-1047). It is clear, therefore, that the juror had become increasingly ill during the course of the trial, that her illness was defined, and that the court could easily determine that a juror suffering with a fever could be out indefinitely, thus further delaying what was an "already unduly protracted trial" *(People v Lawrence, supra,* at 1047) to the detriment of both sides.

In *People v Burns* (118 AD2d 864), the trial court replaced a juror with an alternate so that the juror could go on vacation. Unlike the situation at hand, the defendant in *Burns* did not object to the substitution but, rather, stated that he would leave it to " 'the discretion of the judge' " *(People v Burns, supra,* at 865). Here, the defense counsel stated that he desired to wait until the ill juror became available.

More recently, in *People v McDonald* (143 AD2d 1050), the clerk of the court received a phone call from the juror's husband advising that his wife had a virus, that she had been up all night feeling very ill, and would not be able to attend court that day. Although no further inquiry was made, under the circumstances of that case where the juror had a virus and was up all night feeling very ill, it was apparent that the juror would not be readily available to continue with the trial. *People v Rushings* (159 AD2d 527) can also be distinguished. The jury was ending its second week of jury service when a

juror telephoned the court and indicated that she had experienced chills and vomiting and that she would be unable to serve as a juror that day. It was certainly reasonable for the Court to come to the conclusion, having some detailed information as to the illness involved, that the juror would not be readily available to continue with the trial *(see also, People v Allen,* 163 AD2d 396).

The circumstances in this case are different since a mere call to the Central Jury office with a report of illness, without indicating the type of illness or other details concerning the juror's condition and without further inquiry by the court, does not meet the standards set forth in *Page (see, People v Paniaqua,* 160 AD2d 334; *People v Pizzali,* 159 AD2d 652; *People v Taylor,* 154 AD2d 634; *People v Celestin,* 150 AD2d 385; *cf., People v Rivera,* 157 AD2d 599; *People v Salley,* 153 AD2d 704). If we were to allow jurors to excuse themselves by merely calling and reporting an illness without more information, it would be an easy task for any juror to relieve himself of continuing with the trial.

Accordingly, since the error is not subject to harmless error analysis *(see, People v Marchese,* 158 AD2d 473), reversal is mandated. Mangano, P. J., Kunzeman, Rubin and Balletta, JJ., concur.